LILLIAN DENISE LUCAS, Plaintiff v. DELANO THADDEUS LUCAS, Defendant

No. COA09-1004

(Filed 15 February 2011)

**1. Appeal and Error— interlocutory orders and appeals—final judgment—alimony and equitable distribution order—attorney fees remaining—not substantive**

An alimony and equitable distribution judgment was final and appeal was not from an interlocutory order even though attorney fees had not been determined. A claim for attorney fees under N.C.G.S. § 50-16.4 is not a substantive issue or in any way part of the merits of the claim.

**2. Divorce— alimony—marital misconduct—findings not sufficient**

An award of alimony was remanded for further findings regarding marital misconduct where. the order and judgment did not specify the type of marital misconduct the court had found.

**3. Divorce— alimony—health insurance**

The trial court could include the maintenance of health insurance in an alimony award since health insurance is indistinguishable from other types of insurance that have been recognized as permissible forms of support and maintenance.

**4. Divorce— alimony—health insurance—findings**

An alimony award that included health insurance was remanded where the findings were not sufficient to allow the reviewing court to determine whether the trial judge exercised proper discretion.

**5. Divorce— alimony—duration—findings—not sufficient**

An alimony award was remanded for further findings regarding the duration of the payments and the health insurance coverage where the award was ambiguous as to termination and did not include findings explaining the reason for the duration chosen.

**6. Divorce— equitable distribution—unequal distribution—findings that equal division not equitable—not sufficient**

An equitable distribution judgment lacked adequate findings of fact where the trial court found that "an unequal distribution of marital property is equitable" rather than that "an equal division

LUCAS v. LUCAS

[209 N.C. App. 492 (2011)]

by using net value of marital property" is not equitable. In order to divide a marital estate other than equally, the trial court must first find that an equal division is not equitable and explain why.

**7. Divorce— equitable distribution—distribution amounts— not sufficient**

An equitable distribution award was remanded for further findings as to the distribution amounts where the appellate court had difficulty determining how the figures were derived.

Appeal by defendant from judgment entered 27 February 2009 by Judge Melinda H. Crouch in New Hanover County District Court. Heard in the Court of Appeals 9 March 2010.

*No brief filed on behalf of plaintiff-appellee.*

*John K. Burns for defendant-appellant.*

GEER, Judge.

Defendant Delano Thaddeus Lucas appeals from an equitable distribution and alimony order and judgment. This appeal demonstrates the importance of adequate findings of fact to permit proper appellate review. Without findings of fact setting out the basis for a trial court's decision, we are unable to determine whether that decision is supported by the evidence, whether it is consistent with the law, and whether it amounts to a reasonable exercise of the trial court's discretion. The order may be perfectly appropriate, but without proper findings of fact, we are not in a position to make that determination.

In this case, we hold, contrary to defendant's position, that the trial court could, as a general matter, properly include in an award of alimony a requirement that defendant provide plaintiff Lillian Denise Lucas with health insurance coverage. The trial court's order, however, failed to include any findings of fact to support that portion of its award. In addition, the trial court failed to make adequate findings of fact regarding (1) its determination that defendant engaged in marital misconduct and (2) the duration of the alimony payments. We similarly have concluded that the trial court's equitable distribution decision lacks adequate findings of fact to explain the basis for the trial court's distribution of assets and liabilities between the parties.

We, therefore, reverse the order and judgment and remand for further findings of fact.

Facts

Plaintiff and defendant were married on 31 December 1986 and separated on 31 December 2006. On 13 May 2008, plaintiff filed a complaint for divorce from bed and board, postseparation support, alimony, equitable distribution, and attorneys' fees. A pretrial order was filed on 29 January 2009. As part of the pretrial order, the parties reached an agreement as to the value, classification, and distribution of most, but not all, of their marital property.

Following a hearing on 29 January 2009, at which the trial court considered the testimony, affidavits, and stipulations of the parties, as well as the pretrial order, the court made the following unchallenged findings of fact. Plaintiff, who has a high school diploma and completed one semester of college, worked for the Cumberland County School System for several years as a teacher's assistant and data manager making up to $2,048.50 per month until 14 August 2006, when she was hospitalized for 12 days for a nervous breakdown and depression. Plaintiff continues to suffer from depression and receives treatment from psychiatrists, psychologists, and medical doctors for her mental condition and accompanying physical symptoms. She has been prescribed over a dozen medications for daily use to treat depression, anxiety, insomnia, itching, acid reflux, digestive conditions, headaches, allergies, and shaking.

Plaintiff had been treated for depression for approximately 10 years prior to the date of separation. The first onset of depression occurred at about the same time plaintiff discovered defendant was having affairs with other women. Subsequently, in 2006, plaintiff discovered emails defendant had sent to another woman expressing his love for that woman. Plaintiff also discovered that defendant had sent flowers to another woman, along with a note marking their nine-year anniversary.

Currently, plaintiff remains out of work, not having worked since her hospitalization. Plaintiff has been denied Social Security disability benefits. She lives with her mother, and her only sources of income since the date of separation have been unemployment benefits, babysitting money from her adult daughter ($80.00 per week for six months), and $10,000.00 in temporary disability benefits received in 2008. Plaintiff submitted an affidavit showing that her monthly living

expenses are $2,200.00 and that she was not receiving any income at the time of the hearing.

Defendant has worked for UPS as a driver for 39½ years and currently earns $72,000.00 per year. In addition, he receives health insurance and pension contributions through his employment.

The court ultimately concluded that plaintiff is a dependent spouse and is actually substantially dependent on defendant for maintenance and support, while defendant is a supporting spouse pursuant to N.C. Gen. Stat. § 50-16.1A (2009). The court ordered that defendant pay plaintiff alimony in the amount of $1,750.00 per month, as well as provide her with health insurance coverage.

With respect to equitable distribution, the trial court found that "an unequal distribution of marital property is equitable given the following distributional factors pursuant to [N.C. Gen. Stat. § 50-20(c) (2009)]: the income, property and liabilities of the parties; the duration of the marriage; the separate pensions of the parties; and the physical and mental health of the parties." The decretal portion of the judgment stated that plaintiff "shall have and recover as part of her equitable share of the marital property and debts" marital assets in the amount of $43,294.50 and marital liabilities in the amount of $10,261.22, resulting in net marital property of $33,033.28. The court provided that defendant's equitable share of the marital property and debts included $55,161.02 in marital assets and $27,027.00 in marital liabilities. The order and judgment then erroneously recited that defendant was receiving $30,134.02 in net marital property.

The judgment was entered on 27 February 2009. The order and judgment stated at the end: "This Order and Judgment is certified as a final judgment pursuant to rule 54(b) of the North Carolina Rules of Civil Procedure." Defendant appealed to this Court on 30 March 2009.

### Jurisdiction

[1] Although the judgment in this case resolved the claims for alimony and equitable distribution, it did not resolve plaintiff's claim for attorneys' fees. Given that the record on appeal indicates that the attorneys' fees claim is still pending, we must, as an initial matter, address whether this appeal is interlocutory.

The trial court purported to certify the order and judgment for immediate appeal pursuant to Rule 54(b) of the Rules of Civil Procedure. Rule 54(b) provides, however, that "the court may enter a

final judgment as to one or more but fewer than all of the claims or parties only if there is no just reason for delay *and it is so determined in the judgment.*" (Emphasis added.) In the absence of a specific finding that "there is no just reason for delay," this Court does not have jurisdiction to hear an interlocutory appeal under Rule 54(b). *See Cunningham v. Brown*, 51 N.C. App. 264, 266-67, 276 S.E.2d 718, 722 (1981) ("The order appealed from in the case *sub judice* does not state that the judge found no just cause for delay. Consequently, the order is not an immediately appealable 'final judgment' under Rule 54(b)[.]"). Some other basis must exist for appellate jurisdiction.

Previously, this Court has held that an appeal from an alimony order must be dismissed as interlocutory when there is still pending a claim for attorneys' fees. *See Webb v. Webb*, 196 N.C. App. 770, 774, 677 S.E.2d 462, 465 (2009). Our Supreme Court, however, in *Bumpers v. Cmty. Bank of N. Va.*, 364 N.C. 195, 202, 695 S.E.2d 442, 447 (2010), questioned *Webb*, which it described as following a case-by-case approach, and adopted a new rule for determining whether an appeal may proceed when the only remaining claim is one for attorneys' fees.

The Court specifically rejected the case-by-case approach in favor of a "bright-line rule": when a claim for attorneys' fees under a particular statute "is not a substantive issue, or in any way part of the merits" of the complaint, then finality of judgment is not precluded. *Id.* at 204, 695 S.E.2d at 448. In *Bumpers*, the Supreme Court addressed the propriety of an appeal from a judgment under N.C. Gen. Stat. § 75-1.1 (2009) (unfair and deceptive trade practices) while a claim remained pending for attorneys' fees under N.C. Gen. Stat. § 75-16.1 (2009). The Court held that because "a party must show that it has prevailed on the substantive claim under section 75-1.1, and that one of the two factors enumerated [in section 75-16.1] exists, . . . a claim for attorney fees under section 75-16.1 is not a substantive issue, or in any way part of the merits of a claim under section 75-1.1." *Bumpers*, 364 N.C. at 203-04, 695 S.E.2d at 448. Accordingly, under the Court's bright-line rule, a pending claim for attorneys' fees under § 75-16.1 does not preclude finality of a judgment resolving all substantive issues of a claim under § 75-1.1. *Bumpers*, 364 N.C. at 204, 695 S.E.2d at 448.

The attorneys' fees statute at issue in this case, N.C. Gen. Stat. § 50-16.4 (2009) (emphasis added), provides that "[a]t any time that a dependent spouse *would be entitled to alimony* pursuant to G.S. 50-16.3A, . . . the court may, upon application of such spouse, enter an

order for reasonable counsel fees for the benefit of such spouse, to be paid and secured by the supporting spouse in the same manner as alimony." *See also Caldwell v. Caldwell*, 86 N.C. App. 225, 227, 356 S.E.2d 821, 822 ("To recover attorney's fees pursuant to G.S. 50-16.4 in an action for alimony, the spouse must be entitled to the relief demanded . . . ."), *cert. denied*, 320 N.C. 791, 361 S.E.2d 72 (1987). Since a claim for attorneys' fees under § 50-16.4 is contingent upon the claimant prevailing on the alimony claim, we conclude, in accordance with *Bumpers*, that a § 50-16.4 claim "is not a substantive issue, or in any way part of the merits of a claim under" N.C. Gen. Stat. § 50-16.3A (2009). *Bumpers*, 364 N.C. at 204, 695 S.E.2d at 448.

Thus, an unresolved claim for attorneys' fees under N.C. Gen. Stat. § 50-16.4 does not preclude a determination of finality for a judgment resolving all substantive issues related to a claim for alimony or alimony together with equitable distribution. In this case, aside from the attorneys' fees issue, there were no unresolved substantive issues, and, therefore, the alimony and equitable distribution judgment was a final judgment, and this appeal is properly before the Court.

<u>Alimony</u>

A. <u>Marital Misconduct</u>

[2] We first address defendant's challenge to the trial court's conclusion that "an award of alimony is equitable considering all relevant factors including: the *marital misconduct* of the Defendant, relative earnings and earning capacity of the parties, the ages and physical, mental and emotional health of the parties and the length of the marriage (20 years)." (Emphasis added.) Defendant contends that the trial court erred in failing to specifically identify the nature of the misconduct and that, in any event, the evidence in this case did not support a finding of marital misconduct.

Under N.C. Gen. Stat. § 50-16.3A(a), "[t]he court shall award alimony to the dependent spouse upon a finding that one spouse is a dependent spouse, that the other spouse is a supporting spouse, and that an award of alimony is equitable after considering all relevant factors, including those set out in" N.C. Gen. Stat. § 50-16.3A(b). N.C. Gen. Stat. § 50-16.3A(b) provides that "[i]n determining the amount, duration, and manner of payment of alimony, the court shall consider all relevant factors, including," among 16 specified factors, "marital misconduct of either of the spouses," N.C. Gen. Stat. § 50-16.3A(b)(1).

"Marital misconduct," in turn, is defined as "any" of a list of nine types of behaviors occurring "during the marriage and prior to or on the date of separation." N.C. Gen. Stat. § 50-16.1A(3). The list includes "[i]llicit sexual behavior," defined as "acts of sexual or deviate sexual intercourse, deviate sexual acts, or sexual acts defined in G.S. 14-27.1(4), voluntarily engaged in by a spouse with someone other than the other spouse." N.C. Gen. Stat. § 50-16.1A(3)(a). It also includes "[i]ndignities rendering the condition of the other spouse intolerable and life burdensome." N.C. Gen. Stat. § 50-16.1A(3)(f).

The order and judgment in this case does not specify what type of "marital misconduct" the trial court found had occurred. While defendant argues that the findings and evidence do not establish illicit sexual behavior, it may be that the trial court found the existence of indignities. We cannot determine the sufficiency of the evidence to support a finding of marital misconduct without knowing which form of marital misconduct the trial court believed occurred and the basic facts supporting that determination. *See Briggs v. Briggs*, 21 N.C. App. 674, 676, 205 S.E.2d 547, 549 (1974) (remanding where Court was "unable to determine by appellate review the basic facts upon which the trial court predicated its award"). Accordingly, we must reverse the award of alimony and remand for further findings of fact regarding the issue of marital misconduct.

B. Health Insurance

[3] Next, defendant challenges the portion of the alimony award requiring defendant to "continue to maintain health insurance coverage on" plaintiff. The decretal portion of the order and judgment provided that, "[a]s and in the nature of ALIMONY," defendant "shall continue to maintain health insurance coverage on the Plaintiff and shall provide to her any and all information and documentation so as to enable her to submit claims on said insurance and/or receive payments and/or reimbursement from claims submitted to the insurance company by her or on her behalf." Defendant first contends that such an award is not authorized by statute and that the trial court, therefore, exceeded its authority by making this award.

Under N.C. Gen. Stat. § 50-16.1A(a), alimony is defined as "an order for payment for the support and maintenance of a spouse or former spouse, periodically or in a lump sum, for a specified or for an indefinite term, ordered in an action for divorce, whether absolute or from bed and board, or in an action for alimony without divorce." *See also Potts v. Tutterow*, 114 N.C. App. 360, 363, 442 S.E.2d 90, 92

(1994) ("The purpose of alimony is to provide support and maintenance for the dependent spouse."), *aff'd*, 340 N.C. 97, 455 S.E.2d 156 (1995). The question here is whether health insurance comes within the meaning of a payment for "support and maintenance" for purposes of N.C. Gen. Stat. § 50-16.1A(a) and § 50-16.3A(a).

Although our courts have not directly addressed this issue, in *Whedon v. Whedon*, 58 N.C. App. 524, 528, 294 S.E.2d 29, 32, *disc. review denied*, 306 N.C. 752, 295 S.E.2d 764 (1982), the trial court entered an alimony award that, in part, ordered the husband to transfer possession of one of his cars to the wife and ordered the husband to pay the wife's automobile liability and collision insurance. On appeal, this Court rejected the husband's challenge to the insurance payment requirement, holding: "The insurance payment was a proper incident of the sequestration of the automobile, which was entirely discretionary with the trial court." *Id.* The Court also overruled the husband's challenge to the portion of the order requiring him to pay the wife's mortgage payments, ad valorem property taxes, and hazard insurance, "find[ing] no abuse of discretion in the requirement that [the husband] make the necessary mortgage, tax, *and insurance payments* on the house." *Id.* at 529, 294 S.E.2d at 33 (emphasis added). Thus, according to *Whedon*, automobile and homeowner's insurance payments are permissible as part of an alimony award.

Consistent with *Whedon*, *Lee's North Carolina Family Law* explains that a trial court may award as alimony various types of payments, including insurance premiums:

> The court's decision to award title or possession of certain property may lead it to order other kinds of alimony as well. For example, a decision to order possession of the marital home may lead the court to order the supporting spouse to make the mortgage payments and pay property taxes; the decision to order possession of an automobile may lead the court to order the supporting spouse also to pay for liability and collision insurance as alimony.

2 Suzanne Reynolds, *Lee's North Carolina Family Law* § 9.54, at 419 (5th ed. 1999).

Health insurance, we believe, is indistinguishable from other types of insurance recognized as permissible forms of support and maintenance. Since a trial court may order a supporting spouse to make homeowner's and automobile insurance payments on behalf of a dependent spouse, even though such payments are not explicitly

authorized under § 50-16.1A(a) or § 50-16.3A(a), we conclude that a court may also order a supporting spouse to pay for health insurance for a dependent spouse.

In support of his contention, defendant relies on *Michael v. Michael*, 198 N.C. App. 703, 681 S.E.2d 866, 2009 WL 2370613, *5, 2009 N.C. App. LEXIS 1233, *13 (Aug. 4, 2009) (unpublished), arguing that it "implies that the award of health insurance is something other than alimony." Although *Michael*, as an unpublished opinion, is not controlling, we do not, in any event, agree with defendant's reading of the opinion. In *Michael*, the parties had signed a "Separation and Property Settlement Agreement" in which the parties *waived alimony*. This Court simply affirmed the trial court's order finding that the defendant's obligation to provide for the plaintiff's health insurance was *not* alimony, but, instead, was part of the parties' property settlement. Nothing in *Michael* suggests that, in the absence of an agreement waiving alimony, a trial court is prohibited from ordering health insurance coverage as part of an alimony award.

Moreover, we note that this Court has, on occasion, affirmed alimony orders requiring health insurance payments without discussing whether those payments were authorized under N.C. Gen. Stat. § 50-16.1A(a) and § 50-16.3A(a). *See Ahern v. Ahern*, 63 N.C. App. 728, 728, 306 S.E.2d 140, 141 (1983) (affirming order "requiring plaintiff to pay $2,141 a month and provide her with a car and medical insurance"); *Stickel v. Stickel*, 58 N.C. App. 645, 649, 294 S.E.2d 321, 324 (1982) (rejecting defendant's argument that alimony findings of fact were inadequate to determine fairness of award that included homeowner's insurance and medical insurance benefits).

[4] Defendant also argues that the trial court failed to include sufficient findings of fact supporting its order that defendant provide health insurance coverage to plaintiff. N.C. Gen. Stat. § 50-16.3A(c) provides that "[t]he court shall set forth the reasons for its award or denial of alimony and, if making an award, the reasons for its amount, duration, and manner of payment." If the trial court "fail[s] to state any reason for the amount of alimony, its duration, or the manner of payment," the order must be remanded. *Crocker v. Crocker*, 190 N.C. App. 165, 172, 660 S.E.2d 212, 217 (2008). *See also Hartsell v. Hartsell*, 189 N.C. App. 65, 76, 657 S.E.2d 724, 731 (2008) (remanding where court found "plaintiff had the ability to pay [$650 monthly alimony] amount, but provided no explanation as to why it had concluded that defendant was entitled to that specific amount");

*Friend-Novorska v. Novorska*, 131 N.C. App. 867, 871, 509 S.E.2d 460, 462 (1998) (ordering trial court, on remand, to "make a new award of alimony and make specific findings justifying that award, both as to amount and duration").

Here, on this issue, the trial court merely found that "defendant receives health insurance . . . through his employment." While the language of the decretal portion of the order and judgment suggests that the trial court perhaps expected that plaintiff would simply remain on defendant's UPS policy, defendant points out that if the parties divorce, plaintiff will no longer be covered as his spouse under his existing policy. The trial court made no findings of fact regarding, for example, the reason that plaintiff needed continued coverage; defendant's ability to maintain plaintiff on his policy after the divorce; what should occur if defendant is unable to maintain plaintiff on his policy; the cost of maintaining plaintiff on the policy or of providing alternative coverage; whether plaintiff would be able to obtain coverage if not covered under defendant's plan; what type of coverage would need to be provided; and whether defendant could afford to provide alternative coverage.

The trial court's findings are thus "too meager to enable the reviewing court to determine whether the trial judge exercised proper discretion in deciding what defendant was to pay plaintiff, and . . . the findings which were made do not support the judgment." *Tan v. Tan*, 49 N.C. App. 516, 523, 272 S.E.2d 11, 16 (1980), *disc. review denied*, 302 N.C. 402, 279 S.E.2d 356 (1981). "Without more definite findings on these matters, we are unable to determine whether the judgment is fair to all parties concerned." *Id.*

Consequently, while we hold that the trial court could properly decide to include health insurance coverage in the alimony award, its findings of fact are inadequate to support its award. We, therefore, must also reverse this provision in the alimony award and remand for further findings of fact regarding the requirement that defendant "continue to maintain health insurance coverage on the Plaintiff . . . ."

C. Alimony Termination Provisions

[5] Defendant also challenges the termination provisions included in the decretal portion of the order and judgment. Under the heading of "Termination Events," the judgment provides: "Defendant's obligations for the payment of alimony shall terminate upon the occurrence of a statutory event as noted in NCGS 50-16.9. Defendant's obligation

for the maintenance of Plaintiff's health insurance shall continue until the first occurrence of: (a) Plaintiff receives Social Security disability and Medicare; or (b) Plaintiff becomes gainfully employed and has health insurance available to her through employment."

We first note that this "Termination Events" portion of the decree is ambiguous. We are unable to understand how the trial court intended the alimony award to terminate in this case. Since the trial court referred to the health insurance payments as "in the nature of ALIMONY," the judgment could be read as terminating the health insurance upon the occurrence of the events specified in N.C. Gen. Stat. § 50-16.9(b) (2009) (providing that alimony "shall terminate" upon remarriage or cohabitation of dependent spouse or upon death of either supporting or dependent spouse). On the other hand, the sentence specifically addressing health insurance could require continuation of health coverage even upon the occurrence of a circumstance set out in N.C. Gen. Stat. § 50-16.9. Although defendant argues that the trial court improperly attempted to exempt health insurance coverage from N.C. Gen. Stat. § 50-16.9, we do not believe that the trial court necessarily had that intent. The alimony award must be clarified to specify when the obligation to provide health insurance terminates.

In addition, this Court has repeatedly held that an alimony order is inadequate when it contains no findings explaining the reason for the duration chosen—in this case, findings explaining why the trial court believed it necessary to continue alimony until the occurrence of the events set out in N.C. Gen. Stat. § 50-16.9. *See Hartsell,* 189 N.C. App. at 76-77, 657 S.E.2d at 731 (remanding where trial court ordered alimony to continue until death or remarriage of defendant but "included no findings of fact at all to explain its rationale for the duration of the award"); *Squires v. Squires,* 178 N.C. App. 251, 264, 631 S.E.2d 156, 163 (2006) (remanding for further findings of fact concerning duration of alimony award where court ordered alimony to "continue until the death of one of the parties, or plaintiff's remarriage or cohabitation, but failed to make any finding about the reasons for this duration"); *Fitzgerald v. Fitzgerald,* 161 N.C. App. 414, 421-22, 588 S.E.2d 517, 523 (2003) (remanding where court "did not make required findings as to the reasons for making the duration of the alimony continuous until defendant dies, remarries, or cohabits"). We must, therefore, also remand for findings of fact regarding the reason for the duration of the $1,750.00 monthly payments and health insurance coverage.

Equitable Distribution

[6] We also agree with defendant that the equitable distribution judgment lacks adequate findings of fact. After making findings about various specific pieces of property, the trial court found "that an unequal distribution of marital property is equitable given the following distributional factors pursuant to [N.C. Gen. Stat. §] 50-20(c): the income, property and liabilities of the parties; the duration of the marriage; the separate pensions of the parties; and the physical and mental health of the parties." Based on this finding, the court then concluded that "[e]vidence received by the court concerning the distributional factors justify [sic] the equitable division and distribution set forth below in the decretal portion."

In the decretal portion, the court incorporated by reference the parties' inventory of marital property and debts "as to the classification, value and distribution of marital property except as specifically modified in this order by the court." The court then provided that plaintiff's "equitable share of the marital property and debts" was $43,294.50 in marital assets and $10,261.22 in marital liabilities, for a net of $33,033.28 in marital property. The court provided that defendant's "equitable share of the marital property and debts" was $55,161.02 in marital assets and $27,027.00 in marital liabilities, for, according to the order and judgment, a net of $30,134.02 in marital property. It appears that there was an error in subtraction, and the correct net marital property figure for defendant should have been $28,134.02.

As an initial matter, the equitable distribution portion of the order and judgment does not appear to comply with N.C. Gen. Stat. § 50-20(c) (2009). N.C. Gen. Stat. § 50-20(c) provides that "[t]here shall be an equal division by using net value of marital property and net value of divisible property unless the court determines that an equal division is not equitable. If the court determines that an equal division is not equitable, the court shall divide the marital property and divisible property equitably" after considering 12 factors. Here, the trial court found that "an unequal distribution of marital property is equitable" rather than that "an equal division by using net value of marital property" is not equitable.

We do not believe that this difference is a matter of semantics. Rather, as our Supreme Court explained in *White v. White*, 312 N.C. 770, 776-77, 324 S.E.2d 829, 832-33 (1985) (emphasis original):

The trial court in the present case indicated that "pursuant to G.S. 50-20, an equal division of the marital property of the parties is presumed appropriate." The statute in fact does more. It does not create a "presumption" in any of the senses that term has been used to express "the common idea of assuming or inferring the existence of one fact from another fact or combination of facts." 2 Brandis on North Carolina Evidence, § 215 (2d ed. 1982). Instead, the statute is a legislative enactment of public policy so strongly favoring the equal division of marital property that an equal division is made *mandatory* "unless the court determines that an equal division is not equitable." N.C.G.S. 50-20(c). The clear intent of the legislature was that a party desiring an unequal division of marital property bear the burden of producing evidence concerning one or more of the twelve factors in the statute and the burden of proving by a preponderance of the evidence that an equal division would not be equitable. Therefore, if no evidence is admitted tending to show that an equal division would be inequitable, the trial court *must* divide the marital property equally.

When evidence tending to show that an equal division of marital property would not be equitable is admitted, however, the trial court must exercise its discretion in assigning the weight each factor should receive in any given case. It must then make an equitable division of the marital property by balancing the evidence presented by the parties in light of the legislative policy which favors equal division.

Consequently, in order to divide a marital estate other than equally, the trial court must first find that an equal division is not equitable and explain why. Then, the trial court must decide what is equitable based on the factors set out in N.C. Gen. Stat. § 50-20(c)(1)-(12) after balancing the evidence in light of the policy favoring equal division.

Given the language of the trial court's order, we cannot be assured that the trial court gave proper consideration to the policy favoring an equal division of the estate. On remand, the trial court must make the determinations required by N.C. Gen. Stat. § 50-20(c) and *White*. This remand does not mean that the trial court's ultimate decision was in error—we simply need to have an order demonstrating consideration of the policies and factors established by the General Assembly.

LUCAS v. LUCAS

[209 N.C. App. 492 (2011)]

[7] Perhaps because of the trial court's failure to precisely follow the statute, the order and judgment is unclear as to how the trial court decided upon its distribution or why this particular distribution was in fact equitable. First, we have had difficulty determining how the figures were derived. With respect to the marital assets, the trial court accepted defendant's figure regarding the value of assets allocated to him. With respect to plaintiff's marital assets, however, the court valued those assets at $43,294.50, even though the parties had both agreed that the value of the assets distributed to plaintiff is $42,344.50. There is a difference of $50.00 not accounted for.

In addition, the order and judgment appears to conclude that a 52%/48% split (using the trial court's exact numbers) or a 54%/46% split (after correcting the subtraction error) is equitable. As defendant points out, however, that is not actually what the trial court did.

The trial court found—contrary to defendant's contention but consistent with the pretrial order—that an IRA account valued at $42,924.54 was marital property and not defendant's separate property. The court further found that the funds in that account were used to pay off marital debt, although the finding does not specify the amount of the debt paid. There are no findings as to whether the entire value of the account was exhausted by marital debt, taxes, and penalties; whether some of the funds were used for some other purpose as well; or whether some amount remained. The court then found that "the use of these marital funds to pay off the joint marital debts should be reflected as the parties each being assigned one half of those marital liabilities which is consistent with the contentions of the Plaintiff."[1]

The trial court did not make a specific finding as to who would be awarded the IRA marital property. We can deduce from the parties' inventory that the IRA was awarded to defendant—both parties distributed the IRA to defendant. The trial court's decree also incorporated that inventory by reference except as modified by the order. The court's order does not, however, contain any explanation regard-

---

1. Although the trial court's order implies that the marital debt paid with the IRA funds and divided equally between the parties totaled $20,522.44, the record suggests that the total amount of debt paid off with the IRA funds was $29,000.00. The order, however, contains no findings reconciling this difference. If the roughly $8,500.00 debt not accounted for represented separate debt of either party, that could be relevant to the distribution of the IRA funds. Without findings of fact specifically addressing what happened with the IRA, we cannot know for sure.

ing why the trial court decided to distribute the IRA to defendant when at least part of it had been exhausted by marital debt and then to split the marital debt between the parties. By doing so, the trial court's order makes it appear as if defendant is receiving the benefit of $55,161.02 in marital assets, when $42,924.54 (or 78%) of those assets are the IRA, which has been at least partially exhausted by marital debt.

Defendant argues, therefore, that the nature of the division of property and assets is more unequal than appears on the face of the order. Defendant contends that "[t]he result was an award to Plaintiff of a net amount with an actual value of $43,294.50, or about 71% of the total marital assets; and an award to Defendant of a net amount with an actual value of $17,842.79, or about 29% of the total." The trial court's order does not address this issue or explain why it viewed this result—assuming without deciding that it is correct mathematically—as equitable.

We must, therefore, also remand for further findings of fact as to the basis for the distribution amounts. See *Vadala v. Vadala*, 145 N.C. App. 478, 480, 550 S.E.2d 536, 538 (2001) (remanding for further findings of fact when trial court made finding as to amount of plaintiff's income, but gave "no indication as to how [plaintiff's income] was calculated" and Court, therefore, could not "confirm or deny this finding").

We do not address defendant's contention that the award of marital debt, already paid, to plaintiff was "an unwarranted windfall." We cannot determine whether this approach is reasonable or supported by the law and the evidence until we know the basis for the trial court's decision. As N.C. Gen. Stat. § 50-20(j) mandates, "[i]n any order for the distribution of property made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property and divisible property has been equitably divided."

## Conclusion

We must reverse and remand the Equitable Distribution and Alimony Order and Judgment for further findings of fact. With respect to the award of alimony, the trial court shall, on remand, make further findings of fact regarding the health insurance coverage, marital misconduct, the duration of the alimony, and the "Termination Events." As for equitable distribution, the trial court shall on remand make

additional findings as required by N.C. Gen. Stat. § 50-20(c) and (j) and sufficient findings to explain the basis for the court's division of the property and the liabilities.

Reversed and remanded.

Judges McGEE and ERVIN concur.