GEER, Judge.
Defendant Mark S. Denny appeals from an equitable distribution order in which the trial court assigned a 60/40 distribution of the marital estate in plaintiff Katherine Denny's favor. On appeal, defendant primarily argues that the trial court's findings of fact regarding the distributional factors set forth in N.C. Gen.Stat. § 5020(c) (2013) were insufficient to support an unequal division of the marital property in plaintiff's favor. The trial court made specific written findings regarding the distributional factors for which evidence was presented, some of which favored defendant and some of which favored plaintiff. The trial court, however, failed to make any findings regarding how it weighed the factors or how the factors supported a 60/40 distribution in favor of plaintiff. Consequently, it is unclear from the findings whether the trial court adequately considered the factors in light of the strong policy in favor of an equal division of assets. We, therefore, reverse and remand for further findings of fact.
Facts
Plaintiff and defendant were married in 1994 and separated in 2012. The parties had two children during their marriage: a daughter born 13 February 2002, and a second daughter born 17 January 2005. On 21 February 2012, plaintiff filed a complaint for equitable distribution, child custody and support, and attorneys' fees. On 21 March 2012, defendant filed his answer and counterclaims including a claim for equitable distribution.
On 21 May 2012, plaintiff filed a verified reply to the counterclaims, a Motion for Interim Distribution, and a Motion for an Injunction, an Accounting, and an Order Preserving Property Pending Equitable Distribution. On 25 June 2012, the parties entered into an Interim Distribution Consent Order whereby the parties distributed certain marital property, including vehicles and household furnishings.
After the parties separated, defendant continued to live in the marital residence while plaintiff and the minor children lived with plaintiff's parents. On 12 February 2013, plaintiff filed a Motion to Sell Real Property. On 19 February 2013, the trial court entered an order preserving marital property and on 19 April 2013, the trial court entered an order to sell real property.
On 9 September 2013, plaintiff filed a motion for contempt, alleging that defendant failed to comply with the 19 April 2013 order, in that he failed to maintain the property in a marketable condition, refused to use his best efforts and good faith to promptly sell the property, and refused to cooperate with the realtor. The motion alleged that as a result of defendant's behavior, the parties' realtor was terminating its listing agreement with the parties, effective 18 September 2013.
An equitable distribution trial was held on 18 and 19 September 2013. As part of a pretrial order for the hearing, the parties reached an agreement as to the value, classification, and distribution of most, but not all, of their marital property. The trial court entered an order on 19 December 2013, in which it determined that a 60/40 distribution of the marital estate in favor of plaintiff was equitable. The trial court also found defendant in contempt of the 19 April 2013 order. As a result of the contempt finding, the trial court granted plaintiff exclusive authority to work with a realtor to sell the marital residence and reserved the issue of attorneys' fees for a later hearing. Defendant timely appealed the order to this Court.
Discussion
We first note that the order reserved the issue of attorneys' fees for a later hearing, and it is unclear whether this issue is still pending. Although defendant asserts in his brief that the trial court granted plaintiff's motion for attorneys' fees, we have found nothing in the record that supports this assertion. Regardless whether the attorneys' fee issue remains pending, this appeal is properly before this Court. SeeN.C. Gen.Stat. § 50-19.1 (2013) ( "Notwithstanding any other pending claims filed in the same action, a party may appeal from an order or judgment adjudicating a claim for absolute divorce, divorce from bed and board, child custody, child support, alimony, or equitable distribution if the order or judgment would otherwise be a final order or judgment within the meaning of G.S. 1A-1, Rule 54(b), but for the other pending claims in the same action.").
" 'When the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts.' " Williamson v. Williamson,217 N.C.App. 388, 390, 719 S.E.2d 625, 626 (2011) (quoting Oakley v. Oakley,165 N.C.App. 859, 861, 599 S.E.2d 925, 927 (2004) ). Unchallenged findings of fact are binding on appeal. Peltzer v. Peltzer,222 N.C.App. 784, 787, 732 S.E.2d 357, 360 (2012).
Equitable distribution is governed by N.C. Gen.Stat. § 50-20, which requires the trial court to conduct a three-step process: (1) classify property as being marital, divisible, or separate property; (2) calculate the net value of the marital and divisible property; and (3) distribute equitably the marital and divisible property. Cunningham v. Cunningham,171 N.C.App. 550, 555, 615 S.E.2d 675, 680 (2005).
Marital and Separate Property
Defendant first challenges the trial court's classification, in finding of fact 46, of the former marital residence as marital property. Defendant contends that $59,000.00 of the value of the marital residence is his separate property. We disagree.
" 'Separate property' means all real and personal property acquired by a spouse before marriage or acquired by a spouse by devise, descent, or gift during the course of the marriage." N.C. Gen.Stat. § 50-20(b)(2). "[P]roperty acquired by gift from the other spouse during the course of the marriage shall be considered separate property only if such an intention is stated in the conveyance." Id.This provision creates " 'a presumption that gifts between spouses are marital property.' " Dewey v. Dewey,77 N.C.App. 787, 789, 336 S.E.2d 451, 452 (1985) (quoting McLeod v. McLeod,74 N.C.App. 144, 155, 327 S.E.2d 910, 917 (1985) ). N.C. Gen.Stat. § 50-20(b)(2) further provides that "[p]roperty acquired in exchange for separate property shall remain separate property regardless of whether the title is in the name of the husband or wife or both and shall not be considered to be marital property unless a contrary intention is expressly stated in the conveyance." This Court has held that " '[w]hen property titled by the entireties is acquired in exchange for separate property the conveyance itself indicates the contrary intention to preserving separate property required by the statute." ' Dewey,77 N.C.App. at 789, 336 S.E.2d at 453 (quoting McLeod,74 N.C.App. at 156, 327 S.E.2d at 918 ).
In this case, prior to the parties' marriage, defendant's father purchased a residence in Oklahoma, naming himself and defendant on the deed. Subsequently, defendant married plaintiff, and they lived in the residence for three years while defendant was in law school. When defendant sold the residence, he paid $11,000.00 to his father and used the remaining $59,000.00 as a down payment on the first home purchased jointly by defendant and plaintiff as tenants by the entireties. Those funds were rolled over into subsequent homes, including the marital residence at issue here.
Because defendant acquired the Oklahoma residence prior to his marriage to plaintiff, the residence and defendant's portion of the proceeds from the sale of the residence were defendant's separate property. Defendant then used this separate property as a down payment on the first home purchased jointly by defendant and plaintiff, which they owned as tenants by the entirety. Pursuant to Dewey,the conveyance of property titled by the entireties indicates defendant's intent to convert the funds into marital property, and defendant has failed to point to any evidence that he intended his contribution to remain separate property. Therefore, we hold that the trial court properly classified the marital residence as marital property.
Defendant argues, alternatively, that the trial court erred by finding, in finding of fact 50(d), that the money that defendant's father contributed to the purchase of the Oklahoma residence is not a marital debt. "Regardless of who is legally obligated for the debt, for the purpose of an equitable distribution, a marital debt is defined as a debt incurred during the marriage for the joint benefit of the parties." Geer v. Geer,84 N.C.App. 471, 475, 353 S.E.2d 427, 429 (1987). Defendant points to his own testimony at the hearing that he and plaintiff agreed to pay his father back the $59,000.00. Plaintiff, however, testified that defendant's father never asked the parties for repayment of the $59,000.00 and that she considered it a gift. Further, there is no evidence that regular payments were ever made to defendant's father aside from the initial $11,000.00 given to him from the sale proceeds, and a promissory note was never signed.
" 'The credibility of the evidence in an equitable distribution trial is for the trial court.' ... 'The trial court, as the finder of fact in an equitable distribution case, has the right to believe all that a witness testified to, or to believe nothing that a witness testified to, or to believe part of the testimony and to disbelieve part of it.' " Quesinberry v. Quesinberry,210 N.C.App. 578, 584, 709 S.E.2d 367, 373 (2011) (quoting Grasty v. Grasty,125 N.C.App. 736, 739, 482 S.E.2d 752, 754 (1997) ). The trial court, in this case, was entitled to weigh the evidence and believe plaintiff that defendant's father's contribution to the Oklahoma residence was a gift and not a loan. Accordingly, we hold that there is sufficient evidence to support finding of fact 50(d).
Equitable Distribution
Once all the property has been classified and valued, N.C. Gen.Stat. § 50-20(c) provides that "[t]here shall be an equal division by using net value of marital property and net value of divisible property unless the court determines that an equal division is not equitable." The statute further provides that "[i]f the court determines that an equal division is not equitable, the court shall divide the marital property and divisible property equitably" and, in doing so, the trial court "shall consider" the factors set out in the statute. Id.The trial court must "make specific findings of fact regarding each factor specified in N.C. Gen.Stat. § 50-20(c)... on which the parties offered evidence." Embler v. Embler,159 N.C.App. 186, 188, 582 S.E.2d 628, 630 (2003).
" 'Equitable distribution is vested in the discretion of the trial court and will not be disturbed absent a clear abuse of that discretion. Only a finding that the judgment was unsupported by reason and could not have been a result of competent inquiry, or a finding that the trial judge failed to comply with the statute, N.C.G.S. § 50-20(c) [ ], will establish an abuse of discretion.' " Hinkle v. Hinkle,--- N.C.App. ----, ----, 742 S.E.2d 325, 327 (2013) (quoting Wiencek-Adams v. Adams,331 N.C. 688, 691, 417 S .E.2d 449, 451 (1992) ).
Defendant argues that the trial court failed to make sufficient findings of fact regarding all of the distributional factors upon which evidence was presented. Specifically, defendant argues that the trial court failed to make findings regarding his contribution of separate funds to the marital estate, the parties' incomes, defendant's mental health, and plaintiff's purported dissipation of divisible property. We address each of defendant's arguments in turn.
Defendant first argues that the trial court should have considered his contribution of separate funds to the marital estate as a factor in his favor in distribution. We agree. "[S]eparate property which is either given to the marital estate or 'which trans mutes[sic] by implied giftinto marital property' ..., is a division factor which may justify an unequal division of the marital property." Collins v. Collins,125 N.C.App. 113, 116, 479 S.E.2d 240, 242 (1997) (quoting Brett R. Turner, Equitable Distribution of Property§ 8:05 (2d ed.1994)).
It is unclear from the trial court's order whether it considered this as a distributional factor. Finding of fact 50(d) states that "[defendant's] father did contribute money to the purchase of the parties' home in Oklahoma and the Court finds that it is not a marital debt[.]" It appears that the trial court considered defendant's father's contribution as a gift to both plaintiff and defendant and did not consider the Oklahoma residence to be defendant's separate property. However, defendant testified that the deed was in his name and his father's name. Therefore, when the house sold for $70,000.00, defendant and his father were entitled to $35,000.00 each. Instead, defendant's father received $11,000.00 and defendant used the remaining $59,000.00 to buy a house for plaintiff and defendant. The trial court could find that defendant contributed $35,000.00 of his separate property to the marital residence and that defendant's dad gave a marital gift of $24,000.00. The $35,000.00 could have been considered by the trial court as a distributional factor in defendant's favor. The trial court's failure to make a finding of fact regarding this factor was error.
Defendant next contends that the trial court erred in calculating the parties' income. He asserts that the trial court's calculation of plaintiff's salary, which included her base salary of $86,000.00 plus $10,000.00 in bonuses received in 2013 as of the September hearing, only accounts for a partial year salary for plaintiff. Meanwhile, defendant asserts, the trial court attributed an entire year's salary to defendant-his base salary of $84,000.00 per year-even though defendant had been unemployed during part of 2013. Additionally, defendant argues that the trial court did not consider that plaintiff's counsel had filed a North Carolina State Bar grievance against defendant in April 2013, which affected his ability to find employment and diminished his chances of a higher salary in the future.
The relevant time frame for calculating the parties' income as a distributional factor under N.C. Gen.Stat. § 50-20(c) is the time of distribution. Godley v. Godley,110 N.C.App. 99, 117, 429 S .E.2d 382, 393 (1993). At the time of trial, defendant was employed and earning a salary of $84,000.00. Therefore, it was not error for the trial court to fail to consider his brief period of unemployment earlier that year. Defendant's arguments regarding plaintiff's unearned bonuses and the State Bar grievance against defendant affect their future earning capacities. North Carolina case law indicates that while the trial court is authorized to make a finding regarding a party's future earning capacity, it is not required to do so. See Becker v. Becker,127 N.C.App. 409, 412, 489 S.E.2d 909, 912 (1997) (holding that a court "mayconsider a party's earning potential as a factor justifying an unequal division of marital property" (emphasis added)); Harris v. Harris,84 N.C.App. 353, 359, 352 S.E.2d 869, 873 (1987) (holding only that § 50-20(c)(1) grants "the trial court the authority to consider the future prospects of the parties, as well as their status at the time of the hearing"). See also Rice v. Rice,159 N.C.App. 487, 498, 584 S.E.2d 317, 325 (2003) (citing Harrisfor proposition that trial court may consider future prospects). Here, the trial court's calculation of the parties' incomes at the time of distribution is supported by the evidence in the record, and it was not error for the trial court to decline to speculate regarding the parties' future earnings potentials.
Next, defendant argues that the trial court did not adequately consider or make findings regarding defendant's mental health. We disagree. The trial court addressed this factor by finding that both plaintiff and defendant are in "good health." This finding is supported by defendant's own testimony at the equitable distribution hearing that both his physical and mental health is "fine."
Defendant, nevertheless, asserts that the trial court's finding that he is in "good health" is contrary to the trial court's position in the custody proceedings, where the trial court has denied defendant temporary custody or visitation of his children due to his mental health issues. Again, we disagree. The purpose of each proceeding is distinct, and therefore, the inquiry regarding defendant's health in an equitable distribution proceeding serves a different purpose than defendant's health in a custody proceeding. In the custody proceeding, defendant's mental health was only relevant to the determination whether he was a fit parent and whether it was in his children's best interests that he be granted visitation. SeeN.C. Gen.Stat. § 50-13.5(i) (2013) ("In any case in which an award of child custody is made in a district court, the trial judge, prior to denying a parent the right of reasonable visitation, shall make a written finding of fact that the parent being denied visitation rights is an unfit person to visit the child or that such visitation rights are not in the best interest of the child.").
On the other hand, in an equitable distribution proceeding, the parties' health is relevant to the extent it affects the equitable distribution of assets. For example, if a party's health affects his or her ability to earn a living or increases his or her living expenses, that may be a factor that supports an unequal division of assets in his or her favor. Compare Albritton v. Albritton,109 N.C.App. 36, 42, 426 S.E.2d 80, 84 (1993) (holding that defendant's declining health and inability to work were factors that supported unequal distribution of marital estate in his favor) with Troutman v. Troutman,193 N.C.App. 395, 401, 667 S.E.2d 506, 511 (2008) (holding that defendant's poor health did not tilt scales in defendant's favor in equitable distribution because defendant "is currently incarcerated, where he neither works to maintain his standard of living ... nor must pay for health care").
Thus, the trial court's finding in the equitable distribution proceeding that defendant is in "good health" is not inconsistent with the trial court's position in the custody proceedings. Defendant has not pointed to any evidence in the record that he is in poor health or that the mental health issues that the trial court found in the child custody proceeding affect his ability to earn a living or considerably increase his living expenses. Accordingly, we do not find persuasive defendant's argument that the trial court failed to adequately consider defendant's mental health.
Defendant also asserts that the trial court failed to consider that plaintiff took out $46,156.00 in loans on her 401(k), thereby devaluing the 401(k) by that amount, in violation of the order preserving marital property. Defendant correctly asserts that dissipating marital or divisible assets is a distributional factor that may be considered pursuant to N.C. Gen.Stat. § 50-20(c)(11a). However, the record does not support defendant's contention that plaintiff's post-separation loans devalued her 401(k).
The trial court found that the value of the 401(k) on the date of separation and the date of distribution remained the same: $141,949.00. This finding is based upon the parties' stipulations contained in the Final Equitable Distribution Pretrial Order. It is well established that, "[s]tipulations are judicial admissions and are binding upon the parties absent well-established exceptions[.]" Comstock v. Comstock,--- N.C.App. ----, ----, 771 S.E.2d 602, 609 (2015). Such exceptions include a showing of mutual mistake of fact, " 'misrepresentations as to material facts, undue influence, collusion, duress, fraud, and inadvertence.' " Plomaritis v. Plomaritis,222 N.C.App. 94, 107, 730 S.E.2d 784, 792 (2012) (quoting Lowery v. Locklear Constr.,132 N.C.App. 510, 514, 512 S.E.2d 477, 479 (1999) ). Here, defendant has not made any argument that the pretrial order should be set aside based upon any of these exceptions. Therefore, defendant is bound by the stipulation that establishes that plaintiff's post-separation loans did not devalue plaintiff's 401(k).
In sum, we hold that the trial court made specific findings of fact regarding all the distributional factors on which evidence was offered with the exception of whether defendant contributed his separate funds to the marital estate. On remand, the trial court must make findings of fact on this factor.
We now turn to defendant's argument that the trial court abused its discretion in awarding a 60/40 distribution in favor of plaintiff when many of the factors upon which it made specific findings weighed in defendant's favor. The trial court, after stating that it had considered all the factors listed in N.C. Gen.Stat. § 50-20(c), made the following specific findings regarding the factors:
a) Separate Property items are Plaintiff/Wife's-Wells Fargo accounts that were opened post date of separation should be distributed to Plaintiff/Wife;
b) Plaintiff/Wife has incurred debt post date of separation and that debt is distributed to Plaintiff/Wife. Defendant/Husband has incurred debt post date of separation and that debt is distributed to Defendant/Husband;
c) Plaintiff/Wife has continued to pay for children's tuition, put actions to words and continued to contribute to the children's 529 plans for 19 months showing that she is a responsible person and therefore those accounts are distributed to the children and Plaintiff/Wife will be the custodian for those accounts, Defendant/Husband shall be given once a year statements showing the balance and activity in the accounts. Defendant/Husband can contribute to the accounts;
d) Defendant/Husband's father did contribute money to the purchase of the parties' home in Oklahoma and the Court finds that it is not a marital debt;
e) The Verizon Bill was not a marital debt;
f) Defendant/Husband's ambulance bill is not a marital debt;
g) There have been repairs made to the marital residence in anticipation of sale, and each party has paid half of the balance;
h) Defendant/Husband has maintained the marital residence by continuing to pay for lawn care; cleaning, and general maintenance;
i) The Court finds that the taxes paid by Defendant/Husband on his primary vehicle, a Toyota Camry is not a marital debt;
j) The Court finds that the increase in the value of the marital residence is due to passive market forces;
k) Defendant/Husband has reduced principle amount owed on the marital residence by $10,800.00;
l) Defendant/Husband has paid all taxes, insurance, PMI, and HOA dues associated with the marital residence since the date of separation;
m) Defendant/Husband has rented out rooms in the marital residence since the date of separation and has acquired $8,085.00 in rental income;
n) Defendant/Husband works for Gorman and Associates, P.A. and earns $84,000.00 per year;
o) Since the date of separation, Defendant/Husband has incurred additional, separate debt including some credit card debt and debt to his father (SweetPea);
p) Plaintiff/Wife works for Wells Fargo and earns a base salary of $86,000.00 per year and in addition to bonuses which are subject to economic forces, but she has earned bonuses in the amount of $10,000.00 so far this year;
q) Plaintiff/Wife has incurred additional, separate debt since the date of separation, including credit card debt, and 401(k) debt;
r) Plaintiff/Wife and Defendant/Husband both have tax-deferred savings;
s) The Court finds that the two largest marital assets, the marital residence and the parties' retirement accounts are difficult to liquidate;
t) The Court finds that Defendant/Husband has maintained the marital residence, however the Court also finds that Defendant/Husband has, at times, not paid the mortgage, and this has had an impact on Plaintiff/Wife's credit;
u) Defendant/Husband is 42 years old and is in good health; and
v) Plaintiff/Wife is 42 years old and in good health.
The trial court then concluded that "[i]n consideration of these factors, the Court finds an unequal division of the marital estate to be equitable. Having considered all the factors, the Court assigns a 60/40 division of the marital estate in Plaintiff/Wife's favor."
"[A] finding which merely states that 'due regard' has been given to the section 50-20(c) factors, without supporting findings as to the ultimate evidence presented on these factors, is insufficient as a matter of law because such a general finding does not present enough information to allow an appellate court to determine whether evidence presented on each of the section 50-20(c) factors was duly considered by the trial court [.]" Daetwyler v. Daetwyler,130 N.C.App. 246, 249-50, 502 S.E.2d 662, 665 (1998) (internal citation omitted), aff'd per curiam,350 N.C. 375, 514 S.E.2d 89 (1999).
As explained by our Supreme Court:
[N.C. Gen.Stat. § 50-20 ] is a legislative enactment of public policy so strongly favoring the equal division of marital property that an equal division is made mandatory"unless the court determines that an equal division is not equitable." N.C.G.S. 50-20(c). The clear intent of the legislature was that a party desiring an unequal division of marital property bear the burden of producing evidence concerning one or more of the twelve factors in the statute and the burden of proving by a preponderance of the evidence that an equal division would not be equitable. Therefore, if no evidence is admitted tending to show that an equal division would be inequitable, the trial court mustdivide the marital property equally.
When evidence tending to show that an equal division of marital property would not be equitable is admitted, however, the trial court must exercise its discretion in assigning the weight each factor should receive in any given case. It must then make an equitable division of the marital property by balancing the evidence presented by the parties in light of the legislative policy which favors equal division.
White v. White,312 N.C. 770, 776-77, 324 S.E.2d 829, 832-33 (1985). Thus, "in order to divide a marital estate other than equally, the trial court must first find that an equal division is not equitable and explain why. Then, the trial court must decide what is equitable based on the factors set out in N.C. Gen.Stat. § 50-20(c)(1)-(12) after balancing the evidence in light of the policy favoring equal division." Lucas v. Lucas,209 N.C.App. 492, 504, 706 S.E.2d 270, 278 (2011).
Here, although the trial court made findings of fact regarding the distributive factors, it does not explain why, given those findings, an equal distribution is inequitable. Nor do the findings, as written, make it clear how the trial court determined that a 60/40 division of property is equitable. The findings indicate that defendant has reduced the principle amount owed on the marital residence by $10,800.00, he has paid other costs associated with the marital residence (although the trial court does not quantify these costs), and his income is $12,000.00 less than plaintiff's. These are factors that weigh in defendant's favor.
On the other hand, the trial court found that plaintiff continued to pay the children's tuition and contribute to their 529 plans and that defendant failed "at times" to make mortgage payments, which "has had an impact on [plaintiff's] credit." The trial court does not quantify how much tuition plaintiff has paid or how exactly her credit has been impacted.
Given the strong policy in favor of an equal division and the presence of competing distributive factors that the trial court failed to quantify, we cannot determine from the order whether the trial court adequately considered all of the factors. We, therefore, remand for further findings of fact.[1] See id.at 505, 706 S.E.2d at 278 (remanding for more findings of facts where "the order and judgment is unclear as to how the trial court decided upon its distribution or why this particular distribution was in fact equitable").
Contempt Order
Defendant next argues that the trial court erred in holding him in contempt of the 19 April 2013 Order. That order provided, in pertinent part:
(b) Defendant/Husband shall maintain the former marital residence in marketable condition pending its sale and shall make the former marital residence available to prospective purchasers.
(c) The parties shall utilize their best efforts and good faith to promptly sell the former marital residence.
....
(f) Both parties shall cooperate with any realtor or other person assisting them with the sale of the former marital residence so that the property can be sold as soon as practical.
(g) Both parties shall follow all recommendations of any realtor or other person assisting them with the sale of the property so that the property can be sold as soon as practical (i.e. the realtor's recommendation to lower the current listing price).
In support of its conclusion that defendant was in contempt of the April order, the trial court found that "[a]lthough Defendant/Husband has maintained the property in a marketable condition and made the property available to prospective purchasers, he has willfully violated the [April] Order.... As a result of Defendant/Husband's behavior, Allen Tate terminated their listing agreement with Plaintiff/Wife and Defendant/Husband effective September 18, 2013."
Defendant contends that the trial court erred by failing to set forth specific facts that support its finding defendant in contempt. We agree. It is unclear from the order what "behavior" of defendant constituted a violation of the order and which provision of the order he violated. Without more specific findings, we cannot review whether the evidence is sufficient to support the finding of contempt. See id.at 498, 706 S.E.2d at 274-75 ("We cannot determine the sufficiency of the evidence to support a finding of marital misconduct without knowing which form of marital misconduct the trial court believed occurred and the basic facts supporting that determination."). Accordingly, we remand for additional findings of fact to support the trial court's determination that defendant willfully violated the April 2013 order.
Defendant additionally argues that the contempt order was vague as to how defendant could purge himself of contempt. This issue is moot as the house was sold during the pendency of this appeal. We, therefore, do not address it. See Lee v. Lee,37 N.C.App. 371, 376, 246 S.E.2d 49, 52 (1978) ("As the record reveals and both counsel agree that the plaintiff has complied with that portion of the contempt judgment of 12 April 1977 permitting her to purge herself of contempt, issues relating to the validity of the conditions imposed therein have become moot and need not be considered or discussed.").
REVERSED AND REMANDED.
Judges STEPHENS and DILLON concur.
Report per Rule 30(e).
Opinion
Appeal by defendant from order entered 19 December 2013 by Judge Christy T. Mann in Mecklenburg County District Court. Heard in the Court of Appeals 8 January 2015.

We note that defendant also argues that "[p]laintiff's share of the child expenses is 59%, whereas [defendant's] financial obligation is 41%; however, the equitable distribution is 60/40 allocation when all the assets favor Plaintiff in the distribution." This argument is irrelevant given N.C. Gen.Stat. § 50-20(f), which provides that "[t]he court shall provide for an equitable distribution without regard to alimony for either party or support of the children of both parties."