*832
 
 CALABRIA, Judge.
 

 *2
 
 Louise Annette Carpenter ("plaintiff") appeals from an order denying her claims for alimony and attorneys' fees, and granting an unequal distribution of property in favor of Fred J. Carpenter,
 
 *3
 
 Jr. ("defendant"). We vacate in part and remand the portions of the order denying alimony and attorneys' fees. We affirm in part, vacate in part, and remand for additional proceedings the portion of the order regarding equitable distribution.
 

 I. Background
 

 Plaintiff, a nurse anesthetist, and defendant, an anesthesiologist (collectively, "the parties"), were married on 11 November 1995, and after the parties separated on 30 November 2011, their minor child resided with defendant. During the marriage, plaintiff was employed in various positions, including working for defendant's practice group until 28 February 2010. When plaintiff terminated her employment, she never worked again during the parties' marriage. After the parties separated, plaintiff resumed working as a nurse anesthetist on a contract basis and was paid $250 for her first four hours of work on any given shift, and $65 per hour for additional hours. Plaintiff estimated her earning potential at $40,000 to $50,000 per year. Defendant reported that his income prior to August 2013 included an annual salary from his practice group of $120,000, an additional annual salary from Duke University Medical Center of $15,000, and $94,900 in annual disability payments. In total, defendant earned $229,900 annually.
 

 On 3 June 2011, plaintiff filed a complaint against defendant including claims for divorce from bed and board, post-separation support, alimony, and child custody. Defendant filed his answer on 27 June 2011, which included a counterclaim for custody. Subsequently, their pleadings were amended to add a claim for equitable distribution.
 

 After a trial in Orange County District Court, the Honorable Beverly A. Scarlett found plaintiff's income was in excess of $130,000 per year, concluded that plaintiff was not a dependent spouse, and denied her alimony claim and request for attorneys' fees. For equitable distribution, the trial court found that "an unequal division of property is equitable." Specifically, for the mixed investment fund valued at approximately $1.4 million at the time of the parties' separation, the court determined that after defendant received his separate contributions, 70 percent of the remainder was to be distributed to defendant and 30 percent to plaintiff. On 12 March 2014, the trial court ordered an unequal distribution of the parties' property in favor of defendant. Plaintiff appeals.
 

 II. Alimony
 

 Plaintiff first argues the trial court's findings were insufficient to support its conclusions that she was not a dependent spouse and thus was not entitled to alimony. We agree.
 

 *4
 
 In all non-jury trials, the trial court must specifically find "those material and ultimate facts from which it can be determined whether the findings are supported by the evidence and whether they support the conclusions of law reached."
 
 Crocker v. Crocker,
 

 190 N.C.App. 165
 
 , 168,
 
 660 S.E.2d 212
 
 , 214 (2008) (quoting
 
 Quick v. Quick,
 

 305 N.C. 446
 
 , 451,
 
 290 S.E.2d 653
 
 , 657 (1982) ; citing N.C. Gen.Stat. § 1A-1, Rule 52 (2007) ). A trial court's determination of whether a party is entitled to alimony is reviewable
 
 de novo
 
 on appeal.
 
 Barrett v. Barrett,
 

 140 N.C.App. 369
 
 , 371,
 
 536 S.E.2d 642
 
 , 644 (2000) (citing
 
 Rickert v. Rickert,
 

 282 N.C. 373
 
 , 379,
 
 193 S.E.2d 79
 
 , 82 (1972) ).
 

 Whether a party is entitled to alimony is determined by statute. N.C. Gen.Stat. § 50-16.3A(a) (2013). A party is entitled to alimony,
 
 inter alia,
 
 if (1) that party is a "dependent spouse;" (2) the other party is a "supporting spouse;" and (3) an award of alimony would be equitable under all relevant factors.
 

 Id.
 

 A "dependent spouse" must be either actually substantially dependent upon the other spouse or substantially in need of maintenance and support from the other spouse.
 

 Id.
 

 at § 5016.1A(2). A party is "actually substantially dependent" upon her spouse if she is currently unable to meet her own maintenance and support.
 
 Barrett,
 

 140 N.C.App. at 370
 
 ,
 
 536 S.E.2d at
 
 644 (citing
 
 Williams v. Williams,
 

 299 N.C. 174
 
 , 180,
 
 261 S.E.2d 849
 
 , 854 (1980) ). A party is "substantially
 
 *833
 
 in need of maintenance and support" if she will be unable to meet her needs in the future, even if she is currently meeting those needs.
 
 Barrett,
 

 140 N.C.App. at 371
 
 ,
 
 536 S.E.2d at 644
 
 . If the trial court determines that a party's reasonable monthly expenses exceed her monthly income, and that she has no other means with which to meet those expenses, it may properly conclude the party is dependent.
 
 Beaman v. Beaman,
 

 77 N.C.App. 717
 
 , 723,
 
 336 S.E.2d 129
 
 , 132 (1985).
 

 To determine whether a party is substantially in need of maintenance and support, and therefore a dependent spouse, "the court must determine whether [that] spouse would be unable to maintain his or her accustomed standard of living, established prior to separation, without financial contribution from the other."
 
 Vadala v. Vadala,
 

 145 N.C.App. 478
 
 , 481,
 
 550 S.E.2d 536
 
 , 538 (2001). Thus, "[i]t necessarily follows that the trial court must look at the parties' income and expenses in light of their accustomed standard of living" when determining whether a party is properly classified as a dependent spouse.
 
 Helms v. Helms,
 

 191 N.C.App. 19
 
 , 24,
 
 661 S.E.2d 906
 
 , 910 (2008) (citing
 
 Williams,
 

 299 N.C. at 182
 
 ,
 
 261 S.E.2d at
 
 856 ). The reasonableness of a spouse's expenses, including maintenance and support, must be viewed according to the parties' accustomed standard of living during the marriage.
 
 Williams,
 

 299 N.C. at 183
 
 ,
 
 261 S.E.2d at 856
 
 .
 

 *5
 
 In the instant case, plaintiff testified that she worked three days per week, averaging nine hours per day, and that she earned between $40,000 and $50,000 per year. This assertion was supported by her financial affidavit for her 2012 income of $3,359.68 per month, her 2012 W-2, and several bank statements. Further, plaintiff carefully described her typical weekly work schedule and wages, specifically stating that she earns $250 for the first four hours and $65 per hour afterwards on any given day when she works on an "on-call" basis. Plaintiff explained that she always works whenever her employer calls her, but that the number of hours she works on any particular shift varies greatly, ranging from 10 hours over a two-day period to 16 hours on a single day. Nevertheless, the trial court calculated plaintiff's average net income to be $130,260 per year, even though there was no evidence in the record to suggest that plaintiff was depressing her income by working two or three days per week on an "on call" basis. If the trial court imputed income to plaintiff on the basis of earning capacity, its calculation of plaintiff's income would constitute error. "[B]as[ing] an alimony obligation on earning capacity rather than actual income [requires] the trial court [to] first find that the party has depressed her income in bad faith."
 
 Works v. Works,
 

 217 N.C.App. 345
 
 , 347,
 
 719 S.E.2d 218
 
 , 219 (2011) (internal citation omitted). Alternatively, if the trial court included the $7,500 of monthly post-separation support ("PSS") plaintiff received from defendant in calculating her income, this would also constitute error, as PSS-which eventually terminates upon the occurrence of specified events-is not permanent income.
 
 See
 
 N.C. Gen.Stat. § 50-16.1A(4). Therefore, the trial court erred in its calculation of plaintiff's income.
 

 For plaintiff's monthly expenses, the trial court found that plaintiff reported total monthly expenses of $11,468.19, while defendant reported total monthly expenses for himself and the parties' minor child of $8,680.42. Although the trial court found that the parties did not have a household budget, the court characterized plaintiff's expenses as "excessive," and specified that plaintiff "was a spendthrift during the marriage[,]" spent her salary "lavishly" on yearly trips and vacations, and did not use her salary to enhance the marital economy. Because the trial court failed to determine which, if any, of plaintiff's expenditures were reasonable in light of her accustomed standard of living, during the parties' marriage, and failed to engage in the necessary comparison of those reasonable expenses to a correct calculation of plaintiff's income, the court erred in concluding that plaintiff was not a dependent spouse.
 
 See, e.g.,
 

 Williams,
 

 299 N.C. at 182-83
 
 ,
 
 261 S.E.2d at 856
 
 . As a result, we cannot determine whether plaintiff was a dependent spouse entitled to alimony.
 

 *834
 

 *6
 
 Plaintiff also argues that the trial court's findings are sufficient to support a conclusion that defendant is a supporting spouse. But just because one party is a dependent spouse does not automatically mean that the other party is a supporting spouse.
 
 Barrett,
 

 140 N.C.App. at 373
 
 ,
 
 536 S.E.2d at 645
 
 . Rather, to be deemed a "supporting spouse," as defined in N.C. Gen.Stat. § 50-16.3A, the party must be either substantially depended upon or substantially relied upon for maintenance and support by the dependent spouse. N.C. Gen.Stat. § 50-16.1A(5).
 

 The trial court may properly conclude a party is a supporting spouse if it determines that he enjoys a surplus of income over expenses.
 
 Barrett,
 

 140 N.C.App. at 373
 
 ,
 
 536 S.E.2d at 645
 
 . Presuming, without deciding, the record supports plaintiff's contention, the trial court must determine whether defendant was a supporting spouse, if it concludes on remand that plaintiff is a dependent spouse. Accordingly, we vacate that portion of the trial court's order denying plaintiff's alimony claim and remand for findings to determine whether plaintiff is a dependent spouse and whether defendant is a supporting spouse.
 

 In addition, as a practical matter on remand, the trial court should first determine the equitable distribution matters discussed below prior to considering the alimony issues, since the distribution could potentially change the financial circumstances of the parties including the need for or ability to pay alimony. Although N.C. Gen.Stat. § 50-16.3A provides that "[t]he claim for alimony
 
 may
 
 be heard on the merits prior to the entry of a judgment for equitable distribution," it also provides that if alimony is awarded prior to equitable distribution, "the issues of amount and of whether a spouse is a dependent or supporting spouse may be reviewed by the court after the conclusion of the equitable distribution claim." N.C. Gen.Stat. § 50-16.3A (2015) (emphasis added). In addition, N.C. Gen.Stat. § 50-20(f) provides:
 

 [t]he court shall provide for an equitable distribution without regard to alimony for either party or support of the children of both parties. After the determination of an equitable distribution, the court, upon request of either party, shall consider whether an order for alimony or child support should be modified or vacated pursuant to G.S. 50-16.9 or 50-13.7.
 

 N.C. Gen.Stat. § 50-20(f) (2015).
 

 Since the trial court heard both the alimony claim and the equitable distribution claims simultaneously, it should determine the final equitable distribution prior to determining alimony.
 

 *7
 

 III. Attorneys' Fees
 

 Plaintiff next argues the trial court erred in its denial of her request for attorneys' fees. We agree.
 

 N.C. Gen.Stat. § 50-16.4 provides, "[a]t any time that a dependent spouse would be entitled to alimony pursuant to G.S. 50-16.3A, or post-separation support pursuant to G.S. 50-16.2A, the court may, upon application of such spouse, enter an order for reasonable counsel fees, to be paid and secured by the supporting spouse in the same manner as alimony." N.C. Gen.Stat. § 50-16.4 (2013). Because we vacate that portion of the trial court's order denying alimony and remand for additional findings as to whether plaintiff was entitled to alimony, we also vacate that portion of the order denying plaintiff's claim for attorneys' fees. We remand with instructions for the court to revisit the issue of attorneys' fees, after determining whether plaintiff is entitled to alimony.
 

 IV. Equitable Distribution
 

 Finally, plaintiff asserts the trial court erred in its classification and distribution of marital property to the parties. Specifically, plaintiff argues the trial court erred in classifying an investment account containing $1,469,462 (the "Baird Account") as part separate property, rather than entirely marital property. Plaintiff also argues the trial court erred by entering an unequal distribution in favor of defendant. We disagree with plaintiff's contention regarding the Baird Account, but agree that the trial court must make additional findings of fact prior to granting an unequal distribution. Preliminarily, however, we address defendant's jurisdictional
 
 *835
 
 challenge to the equitable distribution order.
 

 A. Wells Fargo UTMA Account
 

 Defendant contends the trial court incorrectly classified and distributed the Wells Fargo Uniform Transfers to Minors Act Account (the "Wells Fargo UTMA Account") he managed for Matthew Carpenter, the parties' minor child, as marital property. Specifically, defendant contends the trial court erred by classifying the Wells Fargo UTMA Account as marital property and distributing its value of $188,648.52 to defendant, which in turn resulted in an alleged error in plaintiff's favor. Defendant, however, concedes that this issue was not preserved for appellate review due to his failure to give timely notice of appeal and file a cross-appeal. Recognizing these errors, prior to filing his brief with this Court, defendant filed a petition for writ of certiorari, which sought appellate review of this and another issue he failed to preserve. Another panel of this Court denied defendant's writ of certiorari. Thus, we are
 
 *8
 
 unable to address the merits of those issues.
 
 North Carolina Nat'l Bank v. Virginia Carolina Builders,
 

 307 N.C. 563
 
 , 567,
 
 299 S.E.2d 629
 
 , 631-32 (1983) ("[O]nce a panel of the Court of Appeals has decided a question in a given case that decision becomes the law of the case and governs other panels which may thereafter consider the case.").
 

 Nonetheless, defendant in his brief raises for the first time a challenge to the trial court's jurisdiction to order the distribution of the Wells Fargo UTMA Account. According to plaintiff, because this Court denied defendant's writ of certiorari that sought review of the trial court's allegedly improper classification and distribution of the Wells Fargo UTMA Account to defendant, we are now without authority to address defendant's jurisdictional challenge. We disagree.
 

 Because defendant's petition for writ of certiorari was denied, we must decline to address the merits of those issues presented to and decided by the prior panel. However, the following analysis ought to have applied to defendant's petition for writ certiorari:
 

 [W]hen a third party holds legal title to property which is claimed to be marital property, that third party is a necessary party to the equitable distribution proceeding, with their participation limited to the issue of the ownership of that property. Otherwise the trial court would not have jurisdiction to enter an order affecting the title to that property.
 

 Upchurch v. Upchurch,
 

 122 N.C.App. 172
 
 , 176,
 
 468 S.E.2d 61
 
 , 63-64 (1996) (citations omitted). Significantly, defendant argued only that the writ should issue because the trial court erred in classifying the Wells Fargo UTMA Account as marital property and in distributing it to defendant-not because the trial court lacked jurisdiction. As defendant never raised the specific issue of whether the trial court lacked jurisdiction to distribute the Wells Fargo UTMA Account as marital property because the parties' minor child was not joined as a necessary party, another panel of this Court never addressed this issue by denying his petition for writ of certiorari.
 

 It is well settled that "the issue of a court's jurisdiction over a matter may be raised at any time, even for the first time on appeal or by a court
 
 sua sponte.
 
 "
 
 State v. Gorman,
 

 221 N.C.App. 330
 
 , 333,
 
 727 S.E.2d 731
 
 , 733 (2012) (citation, quotations, and brackets omitted). Defendant has properly raised this jurisdictional issue for the first time in his brief, and we must address it.
 
 See, e.g.,
 

 Obo v. Steven B.,
 

 201 N.C.App. 532
 
 , 537,
 
 687 S.E.2d 496
 
 , 500 (2009) ("[T]his Court has not only the power, but the
 
 *9
 
 duty to address the trial court's subject[-] matter jurisdiction on its own motion or
 
 ex mero motu.
 
 ").
 

 Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal. Subject-matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. Subject-matter jurisdiction derives from the law that organizes a court and cannot be conferred on a court by action of the parties or assumed by a court except as provided by that law. When a court decides a matter without the court's having jurisdiction, then the whole
 
 *836
 
 proceeding is null and void, i.e., as if it had never happened. Thus the trial court's subject-matter jurisdiction may be challenged at any stage of the proceedings.
 

 Rodriguez v. Rodriguez,
 

 211 N.C.App. 267
 
 , 270,
 
 710 S.E.2d 235
 
 , 238 (2011) (citing
 
 McKoy v. McKoy,
 

 202 N.C.App. 509
 
 , 512,
 
 689 S.E.2d 590
 
 , 592 (2010) (citations and quotation marks omitted)).
 

 Recently in
 
 Nicks v. Nicks,
 
 this Court held that the trial court lacked jurisdiction to order the distribution of Entrust, LLC, which was claimed to be marital property, where a trust which established 100% membership interest in Entrust was not joined as a necessary party. - -- N.C.App. ----, ----,
 
 774 S.E.2d 365
 
 , 373 (2015). In reaching its decision, the
 
 Nicks
 
 Court cited
 
 Upchurch
 
 and other cases where this Court concluded that the trial court lacked jurisdiction to order equitable distribution of property claimed to be marital property where a third party that held legal title to the property was never joined as a party:
 

 This Court's prior holdings make clear that "when a third party holds legal title to property which is claimed to be marital property, that third party is a necessary party to the equitable distribution proceeding, with their participation limited to the issue of the ownership of that property."
 
 Upchurch v. Upchurch,
 

 122 N.C.App. 172
 
 , 176-77,
 
 468 S.E.2d 61
 
 , 63-64 (holding the trial court lacked jurisdiction to order equitable distribution of a note "executed for the benefit of Husband 'or' Jack A. Upchurch" because Jack A. Upchurch was never joined as a party to the action),
 
 disc. review denied,
 

 343 N.C. 517
 
 ,
 
 472 S.E.2d 26
 
 (1996) ;
 
 see also
 

 Daetwyler v. Daetwyler,
 

 130 N.C.App. 246
 
 , 252,
 
 502 S.E.2d 662
 
 , 666 (1998) (holding that the trial court lacked jurisdiction to order equitable distribution of certificates of
 
 *10
 
 deposit jointly titled in the names of the husband and his mother and sister, who were not named as parties to the action),
 
 affirmed per curiam,
 

 350 N.C. 375
 
 ,
 
 514 S.E.2d 89
 
 (1999) ;
 
 Dechkovskaia,
 
 [232] N.C.App. at [354], 754 S.E.2d at 835 (holding that the trial court lacked jurisdiction to order equitable distribution of two houses titled in the name of the parties' minor child because the minor child was never made a party to the action). Here, the Trust-which holds legal title to Entrust-was never named as a party to this action. We therefore hold that the trial court lacked jurisdiction to order equitable distribution of Entrust.
 
 See, e.g.,
 

 Upchurch,
 

 122 N.C.App. at 176
 
 ,
 
 468 S.E.2d at 64
 
 ("Otherwise the trial court would not have jurisdiction to enter an order affecting the title to that property.") (citation omitted).
 

 Id.
 

 at ----,
 
 774 S.E.2d at 372-73
 
 .
 

 In the instant case, the Wells Fargo UTMA Account, designated as "FREDERICK J CARPENTER JR C/F MATTHEW CARPENTER UTMA NC," was classified as marital property and distributed to defendant. "Chapter 33A of our General Statutes, entitled 'North Carolina Uniform Transfers to Minors Act,' governs the creation and maintenance of UTMA accounts in this State."
 
 Belk ex rel. Belk v. Belk,
 

 221 N.C.App. 1
 
 , 9,
 
 728 S.E.2d 356
 
 , 361 (2012). N.C. Gen.Stat. § 33A-9 (2015) provides in pertinent part:
 

 Custodial property is created and a transfer is made whenever: ... Money is paid ... to a ... financial institution for credit to an account in the name of the transferor ... followed in substance by the words: "as custodian for __________ (name of minor) under the North Carolina Uniform Transfers to Minors Act."
 

 "A transfer made pursuant to [ section] 33A-9 is irrevocable, and the custodial property is indefeasibly vested in the minor[.]" N.C. Gen.Stat. § 33A-11(b) (2015). Whether this account should be classified and distributed as marital property is an issue that can only be determined if Matthew Carpenter-who owns the legal title to this property-is made a party to the action.
 
 See
 

 Dechkovskaia v. Dechkovskaia,
 

 232 N.C.App. 350
 
 , 354,
 
 754 S.E.2d 831
 
 , 835 (2014) (trial court lacked authority to classify two houses-both of which were titled only in the name of the parties' minor child-"as martial [sic] property, to include them in the valuation of the marital estate, and to distribute them to defendant"). Without
 
 *11
 
 joining Matthew as a party to this action prior to adjudicating the
 
 *837
 
 ownership of the Wells Fargo UTMA Account, which was determined to be marital property, the trial court lacked jurisdiction to order its distribution. Therefore, we vacate the portion of the trial court's equitable distribution order that classified and distributed the Wells Fargo UTMA Account and remand for the trial court to join Matthew Carpenter as a party to the action prior to its reconsideration of the classification and, if appropriate, distribution of this account.
 

 B. R.W. Baird Account
 

 We next address plaintiff's argument that the trial court erred in classifying a portion of the Baird Account as separate property. The standard of review on the trial court's classification in an equitable distribution of property is well settled: "[w]hen the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts."
 
 Romulus v. Romulus,
 

 215 N.C.App. 495
 
 , 498,
 
 715 S.E.2d 308
 
 , 311 (2011) (quoting
 
 Lee v. Lee,
 

 167 N.C.App. 250
 
 , 253,
 
 605 S.E.2d 222
 
 , 224 (2004) ). "While findings of fact by the trial court in a non-jury case are conclusive on appeal if there is evidence to support those findings, conclusions of law are reviewable
 
 de novo.
 
 "
 
 Romulus,
 

 215 N.C.App. at 498
 
 ,
 
 715 S.E.2d at 311
 
 (internal citation omitted) (emphasis added).
 

 When making an equitable distribution of a marital estate, a trial court must first classify all property owned by the parties as marital, separate, or divisible. N.C. Gen.Stat. § 50-20(a). "Marital property" encompasses all real and personal property, presently owned, which was acquired by either or both spouses during marriage but before separation.
 

 Id.
 

 § 50-20(b)(1). In comparison, "separate property" is any real or personal property acquired individually by a spouse before marriage, or by devise, descent, or gift.
 

 Id.
 

 § 50-20(b)(2). Finally, "divisible property" is any real or personal property acquired by either spouse after the date of separation, but before the date of distribution.
 

 Id.
 

 § 50-20(b)(4). There is a rebuttable presumption that property acquired after the date of marriage and before separation is marital property.
 

 Id.
 

 § 50-20(b)(1).
 

 North Carolina recognizes the "source of funds" rule, under which assets purchased with, or comprised of, part marital and part separate funds are considered "mixed property" for equitable distribution purposes.
 
 King v. King,
 

 112 N.C.App. 92
 
 , 97,
 
 434 S.E.2d 669
 
 , 672 (1993) (citing
 
 Wade v. Wade,
 

 72 N.C.App. 372
 
 , 382,
 
 325 S.E.2d 260
 
 , 269 (1985) ). In instances where a trial court is charged with distributing mixed property, "each [party] is entitled to an interest in the property in the
 
 *12
 
 ratio [his] contribution bears to the total investment in the property."
 
 Wade,
 

 72 N.C.App. at 382
 
 ,
 
 325 S.E.2d at 269
 
 . Where separate property is invested along with marital property in an asset during marriage but before separation, such commingling "does not necessarily transmute [the] separate property into marital property."
 
 Power v. Power,
 
 ---N.C.App. ----, ----,
 
 763 S.E.2d 565
 
 , 569 (2014) (quoting
 
 Fountain v. Fountain,
 

 148 N.C.App. 329
 
 , 333,
 
 559 S.E.2d 25
 
 , 29 (2002) ). Commingled separate property would, however, be transmuted into marital property, if the party making the separate contribution "is unable to trace the initial deposit into its form at the date of separation."
 
 Power,
 
 ---N.C.App. at ----,
 
 763 S.E.2d at 569
 
 (internal citation and quotation omitted). "[T]he party claiming a certain classification has the burden of showing, by a preponderance of the evidence, that the property is within the claimed classification."
 
 Brackney v. Brackney,
 

 199 N.C.App. 375
 
 , 383,
 
 682 S.E.2d 401
 
 , 406 (2009) (citation omitted).
 

 In the instant case, the trial court found on the date of separation, the value of the Baird Account was $1,469,462. Defendant traced his separate contributions from 11 November 1995, the date of the parties' marriage, when the Baird Account had a value of $225,894. This account was subsequently funded with additional principal contributions of defendant's separate property from 1996 through 2007, for a total separate contribution, by defendant, in the amount of $546,917. The trial court classified $546,917 as defendant's separate property.
 

 *838
 
 The trial court also found that defendant routinely contributed marital funds to the Baird Account that were co-mingled with defendant's separate funds. Overall, the Baird Account appreciated in value between the date of marriage and the date of separation, over and above all principal contributions. However, since defendant testified that he could not itemize whether gains and losses in the Baird Account were attributable to the performance of his separate property, the trial court also classified the balance of the Baird Account, $922,545, as marital property.
 

 The trial court's findings of fact regarding the Baird Account were supported by competent evidence, and the trial court's findings support its conclusion of law that part of the Baird Account was part separate property, and part marital property. Accordingly, we affirm that portion of the trial court's order distributing the Baird Account as defendant's separate property in the amount of $546,917 and $922,545 as marital property.
 

 C. Unequal Distribution
 

 We now address plaintiff's assertion that the trial court erred in granting an unequal distribution in favor of defendant because of its
 
 *13
 
 failure to specifically find that an equal division of property between plaintiff and defendant would not be equitable. "We review the trial court's distribution of property for an abuse of discretion."
 
 Romulus,
 

 215 N.C.App. at 498
 
 ,
 
 715 S.E.2d at 311
 
 (citation omitted).
 

 N.C. Gen.Stat. § 50-20(c) provides, "[t]here shall be an equal division [of property] by using net value of marital property and net value of divisible property
 
 unless the court determines that an equal division is not equitable.
 
 " N.C. Gen.Stat. § 50-20(c) (emphasis added). The statute further provides, "[i]f the court determines that
 
 an equal division is not equitable,
 
 [it] shall divide the ... property equitably."
 

 Id.
 

 (emphasis added).
 

 The trial court in the instant case specifically found that "[t]he defendant has rebutted the presumption favoring an equal ... distribution of marital property." However, this finding does not comply with the mandate of N.C. Gen.Stat. § 50-20(c). As our Supreme Court noted in
 
 White v. White,
 

 [ N.C. Gen.Stat. § 50-20(c) ] does not create a "presumption" in any of the senses that term has been used to express "the common idea of assuming or inferring the existence of one fact from another fact or combination of facts." 2 Brandis on North Carolina Evidence, § 215 (2d ed.1982). Instead, the statute is a legislative enactment of public policy so strongly favoring the equal division of marital property that an equal division is made
 
 mandatory
 
 "unless the court determines that an equal division is not equitable." N.C.G.S. 50-20(c). The clear intent of the legislature was that a party desiring an unequal division of marital property bear the burden of producing evidence concerning one or more of the twelve factors in the statute and the burden of proving by a preponderance of the evidence that an equal division would not be equitable. Therefore, if no evidence is admitted tending to show that an equal division would be inequitable, the trial court
 
 must
 
 divide the marital property equally.
 

 312 N.C. 770
 
 , 776-77,
 
 324 S.E.2d 829
 
 , 832-33 (1985). And in
 
 Lucas v. Lucas,
 
 this Court reversed and remanded an equitable distribution order because there was no assurance "that the trial court gave proper consideration to the policy favoring an equal division of the estate."
 
 209 N.C.App. 492
 
 , 504,
 
 706 S.E.2d 270
 
 , 278 (2011). The
 
 Lucas
 
 Court's reasoning was as follows:
 

 *14
 
 [I]n order to divide a marital estate other than equally, the trial court must first find that an equal division is not equitable and
 
 explain why.
 
 Then, the trial court must decide what is equitable based on the factors set out in N.C. Gen.Stat. § 50-20(c)(1)-(12) after
 
 balancing
 
 the evidence in light of the policy favoring equal division....
 

 On remand, the trial court must make the determinations required by N.C. Gen.Stat. § 50-20(c) and
 
 White.
 

 Id.
 

 (emphasis added). While there is no case law requiring a trial court to use "magic words" indicating that an equal distribution
 
 *839
 
 is not equitable, it is clear that the trial court's finding that the "presumption" favoring an equal distribution had been "rebutted" by defendant was not sufficient, given the holding in
 
 Lucas,
 
 to allow the court to grant an unequal distribution. Specifically, after the trial court determines plaintiff's correct income, the trial court will also have to determine the relative financial circumstances of both parties with respect to income, assets, and liabilities. The trial court made an effort to do so here, as evidenced by the following findings:
 

 W. This Court finds that an unequal division of marital property is equitable for the following reasons:
 

 1. Defendant suffers from a serious disability.
 

 2. Based on Defendant's prognosis, it is likely that he will be required to work less hours and earn less money in the future.
 

 3. Plaintiff has the present ability to work full time.
 

 4. Plaintiff has the present ability to earn a salary that is comparable to or greater than the yearly salary she earned during the course of the marriage.
 

 Although the trial court made other findings of fact relevant to some of the factors listed under N.C. Gen.Stat. § 50-20(c), including a listing of findings the court designated as "other factors" under N.C. Gen.Stat. § 50-20(c)(12), the order specifically relied upon only the four factors noted above as supporting an unequal distribution. These factors would fall under N.C. Gen.Stat. §§ 50-20(c)(1) and (3), which are "the income, property, and liabilities of each party at the time the division of property is to become effective" and the "physical and mental health of both parties." N.C. Gen.Stat. § 50-20(c)(1), (3) (2015). Despite the prior findings
 
 *15
 
 of fact addressing various other distributional factors under N.C. Gen.Stat. § 50-20(c), the order states: "This Court finds that an unequal division of marital property is equitable for the following reasons" and lists only the four reasons above. It is not clear how much, if any, weight the court gave the other findings which would appropriately be considered under N.C. Gen.Stat. § 50-20(c).
 

 We recognize that although there are many potential distributional factors the trial court may consider, "the finding of a single distributional factor under N.C. Gen.Stat. § 50-20(c) may support an unequal division."
 
 Jones v. Jones,
 

 121 N.C.App. 523
 
 , 525,
 
 466 S.E.2d 342
 
 , 344 (1996) (citation omitted);
 
 Edwards v. Edwards,
 

 152 N.C.App. 185
 
 , 187,
 
 566 S.E.2d 847
 
 , 849 (2002). But we are unable to discern how much weight the trial court gave to the factor of the plaintiff's income and earning capacity. As discussed above in regard to the alimony issue, the trial court must on remand consider plaintiff's earnings and whether she was acting in bad faith to suppress her income. To the extent that the unequal distribution was based upon any error as to plaintiff's actual earnings or earning capacity, the trial court must reconsider the distributional factors and its determination as to whether an equal division is not equitable. In addition, the trial court may weigh the factors differently depending upon its determination regarding the Wells Fargo UTMA Account. The trial court must make appropriate findings on remand.
 

 V. Conclusion
 

 The portion of the equitable distribution order pertaining to the Baird Account was properly distributed as part separate and part marital property and is affirmed. The portion of the order pertaining to the Wells Fargo UTMA Account is vacated for lack of jurisdiction. On remand, Matthew Carpenter must be joined as a necessary party prior to the trial court's reconsideration of the classification and, if appropriate, distribution of the UTMA Account.
 

 We remand the issue of equitable distribution to the trial court to determine, in accordance with
 
 Lucas
 
 and N.C. Gen.Stat. § 50-20(c)(1)-(12), whether an equal distribution is equitable and, if it determines that it is not, what type of distribution is equitable. Our remand "does not mean that the trial court's ultimate decision was in error."
 
 Lucas,
 

 209 N.C.App. at 504
 
 ,
 
 706 S.E.2d at 278
 
 . However, the new order needs to include consideration
 
 *840
 
 of the policies and factors established by the General Assembly and as set forth herein.
 

 Id.
 

 The portion of the trial court's order denying alimony and attorneys' fees was based on inadequate findings and conclusions and, therefore,
 
 *16
 
 is vacated. On remand, after first determining the equitable distribution claim, the trial court must make adequate findings to support its alimony determination, taking into consideration the financial circumstances of the parties as established by the equitable distribution on remand, and, if it concludes that plaintiff is entitled to alimony, the trial court must also address whether plaintiff is entitled to attorneys' fees.
 

 AFFIRMED IN PART; VACATED IN PART; AND REMANDED.
 

 Judges STROUD and TYSON concur.