IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-383

Filed 17 October 2023

Carteret County, No. 17 CVD 296

WILLIE RAY ROBERTS, Plaintiff,

v.

JOHN KYLE, Executor of the Estate of CAROLYN GAIL ROBERTS, Defendant.

Appeal by Defendant from order filed 17 August 2021 by Judge Andrew Kent Wigmore in Carteret County District Court. Heard in the Court of Appeals 29 November 2022.

*Law Offices of Bill Ward & Kirby Smith, P.A., by Kirby H. Smith, III, for Plaintiff-Appellee.*

*Valentine & McFadyen, P.C., by Stephen M. Valentine for Defendant-Appellant.*

CARPENTER, Judge.

John Kyle ("Defendant"), Executor of the Estate of Carolyn Gail Roberts ("Wife"), appeals from the trial court's "Equitable Distribution Judgment" (the "Judgment"), allocating certain real and personal property to Willie Ray Roberts ("Plaintiff"). Defendant argues the trial court erred in classifying certain real and personal property as Plaintiff's separate property before allocating same to Plaintiff. After careful review, we affirm the Judgment.

## I. Factual & Procedural Background

Plaintiff and Wife were married on 24 December 1998 and separated on 1 December 2014. Plaintiff filed a complaint for absolute divorce on 24 March 2017. Wife subsequently answered and counterclaimed for equitable distribution. Plaintiff and Wife were granted an absolute divorce on 12 July 2017,[1] with equitable distribution issues reserved for hearing at a later date. On 15 April 2018, Wife passed away, and her son, Defendant, entered this matter by substitution on 11 September 2018.

On 19 December 1997, Plaintiff and his cousin, Walter,[2] purchased a 13.9-acre tract of property for $55,600.00, intending to develop a subdivision called "Tar Kiln Ridge." Plaintiff and Walter paid $11,600.00 down and financed the balance with a note and loan from BB&T, secured by deed of trust. Plaintiff's portion of the down payment came from his personal savings. Plaintiff's primary role in the project involved clearing and preparing the land for development with heavy machinery, while Walter handled the surveying and permits. On 16 June 1998, Walter filed his final plan for Section One of Tar Kiln Ridge, which contained seven lots—three developed lots and four designated as "future development." Plaintiff and Walter sold the first lot on 17 August 1998, prior to Plaintiff's marriage, and applied the sale proceeds to pay down the initial BB&T note.

---

[1] The order granting absolute divorce is not included in the Record.

[2] Walter D. Roberts, Jr. is named in the Judgment as "Danny" Roberts.

On 29 December 1998, four days after Plaintiff's marriage, Plaintiff and Walter obtained a second BB&T loan for $110,000.00, secured by deed of trust on the remaining unsold lots, to pay off the original loan and fund infrastructure development. The Final Plat for Section Two of Tar Kiln Ridge was recorded on 20 April 1999. Plaintiff and Walter began selling the remaining lots in September 1999, paying down the loan principal with sale proceeds, as evidenced by BB&T release deeds. The second BB&T deed of trust was cancelled on 3 March 2001.

Occasionally, Plaintiff and Walter accepted nearby parcels of land as consideration for the sale of Tar Kiln Ridge lots, acquiring Tracts 8A and 9A in exchange for Lots 15, 19, and 21. Plaintiff and Walter then swapped their interests in certain parcels between themselves to acquire full ownership, which is how Plaintiff acquired 100% ownership of Tract 8A and Lot 13. Plaintiff and Walter each continued to own a 50% undivided interest in an undeveloped residual lot at the northeast corner of Tar Kiln Ridge. Accordingly, Plaintiff acquired the properties at issue, Tract 8A and Lot 13, in his sole name, and a 50% interest in the residual lot with Walter.

Plaintiff's preliminary equitable-distribution affidavit filed on 22 June 2020 lists certain vehicles and trailers as marital property. Plaintiff's answers to interrogatories described each disputed vehicle: a 1957 Farmall tractor, a 1963 Farmall tractor, a twenty-two-foot 1995 Core Sounder boat, a 1996 boat trailer, a 1995 Caterpillar bulldozer, and a 1993 Caterpillar backhoe. Plaintiff's 24 November

2020 amended equitable-distribution affidavit again described all vehicles as marital property.

A bench trial on equitable distribution was held before the Honorable Andrew Kent Wigmore on 30 and 31 March 2021 in Carteret County District Court. The Judgment was filed on 17 August 2021, including, *inter alia*, the following findings[3]:

> **5)** On 19 December 1997, the Plaintiff and his cousin, [Walter,] purchased a 13.9-acre tract of land located on State Road 1140 hereafter known as "Tar Kiln Ridge[.]"
>
> **6)** The purchase price of Tar Kiln Ridge was $55,600. The Plaintiff and [Walter] entered into a deed of trust with BB&T on 19 December 1997 for $44,000. Funds from this loan were used, in part, to purchase said 13.9-acre tract.
>
> **7)** Plaintiff and [Walter] testified to beginning work on a subdivision which they called Tar Kiln Ridge and doing the surveying and land clearing and line cutting themselves, on Tar Kiln Ridge, right after purchasing the property, in the winter, which began by the calendar a couple days after purchase.
>
> **8)** There was no evidence to refute [Plaintiff's and Walter's] testimony[ies] that they did all the work themselves on the Tar Kiln Ridge property.
>
> **9)** Too much work had been done on the property prior to DOT's first road inspection of 12 April 1999 to believe that all the work completed had been done solely after the date of marriage, 24 December 1998.
>
> **10)** The first lot sold in Tar Kiln Ridge, Lot #2, was sold on 17 August 1998, prior to the 24 December 1998 date of marriage of the parties.

---

[3] The Findings in the Judgment are not numbered sequentially. The Findings skip numbers 16 and 18, meaning they read, in order, Finding 15, Finding 17, Finding 19, Finding 20 . . . .

**11)** The sale of the first lot in Tar Kiln Ridge, Lot #2 on 17 August 1998 is the "defining moment" when the property had become a subdivision, and thus, the time in which the property value increases to the sum of all the lots to be sold.

**12)** Further proof of this increased value is BB&T's willingness to loan $110,000.00 – twice the purchase price on the original deed, upon just the signatures of Plaintiff and [Walter] and their collateral which is solely the Tar Kiln Ridge lots.

**13)** The Deed of Trust for the $110,000.00 loan on 29 December 1998, four days after the marriage, does not include [Wife's] name or signature, nor does it subject the Defendant to a single penny of indebtedness.

**14)** No marital funds [were] expended to repay the indebtedness as each payment made comes directly from the sale of a Tar Kiln Ridge lot.

**15)** Therefore, the court finds that the Tar Kiln Ridge Subdivision and its lots, were fully acquired as separate property when the first lot was sold bringing to fruition the subdivision itself, and its increase in separate property value above and beyond the indebtedness later placed on said property by the $110,000.00 loan on 29 December 1998.

**17)** Therefore, the remaining lots of Tar Kiln Ridge, lot 13 and the [residual lot] are classified as the Plaintiff's separate property as the Plaintiff has overcome the burden of marital property placed on said property by the Defendant's Equitable Distribution claim.

**19)** During the marriage and prior to the date of separation, the Plaintiff obtained in his separate name a parcel of real estate off Roberts Road in Newport, NC containing 18.41 acres and known as "Tract 8A[.]"

**20)** Hence, the separate property lots traded for [Tract 8A]

without monetary payment or indebtedness of any form, retained the separate property classification previously found in the Tar Kiln lots.

**21)** Tract 8A is presumed to be marital property because it was acquired during the marriage and prior to the date of separation. However, the Plaintiff has overcome the burden of marital property placed on said property by the Defendant's equitable distribution claim. Therefore, Tract 8A is classified as Plaintiff's separate property.

Based upon its findings, the trial court concluded, *inter alia*:

**3)** Although the lots in Tar Kiln Ridge (with the exception of Lot #2) were sold during the marriage, [the] court finds the Plaintiff has overcome the presumption that these lots are [marital].

**4)** The court finds that the Plaintiff has overcome the presumption that Tract 8A is a marital asset.

**5)** The court finds that the Plaintiff has overcome the presumption that lot 13 and the residual lot in the Tar Kiln Ridge Subdivision are marital assets.

Defendant filed timely, written notice of appeal on 7 September 2021.

## II.    Jurisdiction

This Court has jurisdiction over an appeal from a final equitable-distribution judgment pursuant to N.C. Gen. Stat. § 7A-27(b)(2) (2021).

## III.    Issues

The issues before this Court are whether the trial court erred by: (1) classifying Lot 13, the residual lot of Tar Kiln Ridge, and Tract 8A as Plaintiff's separate property; (2) classifying certain vehicles as Plaintiff's separate property; and (3)

finding the second BB&T loan did not subject Wife's estate to any financial responsibility.

## IV.     Standard of Review

The standard of review for a trial court's classification of property during equitable distribution is "whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Foxx v. Foxx*, 282 N.C. App. 721, 724, 872 S.E.2d 369, 372–73 (2022) (citing *Carpenter v. Carpenter*, 245 N.C. App. 1, 11, 781 S.E.2d 828, 837 (2016)). "The trial court's findings of fact are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary." *Kabasan v. Kabasan*, 257 N.C. App. 436, 440, 810 S.E.2d 691, 696 (2018) (citation omitted). Unchallenged findings of fact "are presumed to be supported by competent evidence and are binding on appeal." *Peltzer v. Peltzer*, 222 N.C. App. 784, 787, 732 S.E.2d 357, 360 (2012).

"While findings of fact by the trial court in a non-jury case are conclusive on appeal if there is evidence to support those findings, conclusions of law are reviewable *de novo*." *Carpenter*, 245 N.C. App. at 11, 781 S.E.2d at 837. "Because the classification of property in an equitable distribution proceeding requires the application of legal principles, this determination is most appropriately considered a conclusion of law." *Romulus v. Romulus*, 215 N.C. App. 495, 500, 715 S.E.2d 308, 312 (2011) (citation omitted). Therefore, we review the trial court's classification of

property in this equitable distribution case *de novo*. *See Carpenter*, 245 N.C. App. at 11, 781 S.E.2d at 837.

## V. Analysis

### A. Classification of Real Property

In his first arguments, Defendant challenges various findings of fact and the trial court's conclusions of law that Lot 13 and the residual lot of Tar Kiln Ridge, as well as Tract 8A, were Plaintiff's separate property.[4] Specifically, Defendant asserts that Section Two of Tar Kiln Ridge was acquired during the marriage through repayment of marital debt and active appreciation; therefore, Lot 13, the residual lot, and Tract 8A—acquired in exchange for Lot 19 of Tar Kiln Ridge and Plaintiff's 50% interest in Tract 9A—are marital property subject to equitable distribution. Plaintiff avers that separate property brought into a marriage remains separate property, and the evidence and findings established that Plaintiff successfully rebutted the marital presumption regarding the disputed real property. There is merit to portions of the arguments raised by each party.

---

[4] It is apparent Defendant disputes certain findings and conclusions on this issue, but aside from Findings 11 and 15, he failed to specify their respective numbers to aid our review. Given the nature of his argument and authorities cited, we additionally infer his challenges to Findings 17, 20, and 21, and Conclusions 4 and 5. As previously discussed, "findings" which classify property or apply burden-shifting principles are more properly considered conclusions of law. *See Romulus*, 215 N.C. App. at 500, 715 S.E.2d at 312. We review them as such. *See Cox v. Cox*, 238 N.C. App. 22, 31, 768 S.E.2d 308, 314 (2014) ("When this Court determines that findings of fact and conclusions of law have been mislabeled by the trial court, we may reclassify them, where necessary, before applying our standard of review.").

"In an action for equitable distribution, the trial court is required to conduct a three-step analysis: 1) identification of marital and separate property; 2) determination of the net market value of the marital property as of the date of separation; and 3) division of the property between the parties." *Est. of Nelson ex rel. Brewer v. Nelson*, 179 N.C. App. 166, 168, 633 S.E.2d 124, 126–27 (2006), *aff'd*, 361 N.C. 346, 643 S.E.2d 587 (2007). The dispute in this case concerns the trial court's analysis of step one—identifying or classifying the marital and separate property. Our General Statutes define marital property and separate property as follows:

> (1) "Marital property" means all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned, except property determined to be separate property or divisible property in accordance with subdivision (2) or (4) of this subsection. . . . *It is presumed that all property acquired after the date of marriage and before the date of separation is marital property except property which is separate property under subdivision (2) of this subsection.* It is presumed that all real property creating a tenancy by the entirety acquired after the date of marriage and before the date of separation is marital property. *Either presumption may be rebutted by the greater weight of the evidence.*
>
> (2) "Separate property" means all real and personal *property acquired by a spouse before marriage* or acquired by a spouse by devise, descent, or gift during the course of the marriage. However, property acquired by gift from the other spouse during the course of the marriage shall be considered separate property only if such an intention is stated in the conveyance. *Property acquired in exchange for separate property shall remain separate property regardless of whether the title is in the name of the husband or wife or both and shall not be considered to be marital*

> *property unless a contrary intention is expressly stated in the conveyance. The increase in value of separate property and the income derived from separate property shall be considered separate property.*

N.C. Gen. Stat. § 50-20(b)(1)–(2) (2021) (emphasis added). The statute contains a presumption that property acquired after the date of marriage and before separation is marital property, which may be rebutted by a preponderance of evidence. N.C. Gen. Stat. § 50-20(b)(1).

> The burden of showing the property to be marital is on the party seeking to classify the asset as marital and the burden of showing the property to be separate is on the party seeking to classify the asset as separate. A party may satisfy her burden by a preponderance of the evidence. If the party claiming property should be classified as marital property meets the burden by a preponderance of the evidence, then the burden shifts to the other party to prove the property is separate. If both parties meet their burdens then the property is separate property.

*Atkins v. Atkins,* 102 N.C. App. 199, 206, 401 S.E.2d 784, 787 (1991).

Moreover, if separate property increases in value during the marriage, such increase may become marital property, depending on whether the increase is due to active efforts or passive forces. The statutory "provision concerning the classification of the increase in value of separate property has been interpreted as referring only to passive appreciation of separate property, such as that due to inflation, and not to active appreciation resulting from the contributions, monetary or otherwise, by one or both spouses." *Lawrence v. Lawrence,* 75 N.C. App. 592, 595, 331 S.E.2d 186, 188 (1985). With respect to active appreciation of separate property, any increase in value

between the date of acquisition and the date of separation is presumptively marital property unless it is shown to be the result of passive appreciation. *Conway v. Conway*, 131 N.C. App. 609, 616, 508 S.E.2d 812, 817 (1998).

"In making an equitable distribution determination, all property must be classified as marital or separate, and when property has dual character, the component interests of the marital and separate estates must be identified[.]" *Crago v. Crago*, 268 N.C. App. 154, 159, 834 S.E.2d 700, 705 (2019) (citation and internal quotations omitted), *rev. denied,* 373 N.C. 592, 838 S.E.2d 181 (2020). "North Carolina recognizes the 'source of funds' rule, under which assets purchased with, or comprised of, part marital and part separate funds are considered 'mixed property' for equitable distribution purposes." *Carpenter*, 245 N.C. App. at 11, 781 S.E.2d at 837.

Where separate property is invested along with marital property in an asset during marriage but before separation, such commingling does not necessarily transmute the separate property into marital property; however, commingled separate property may be transmuted into marital property if the party making the separate contribution is unable to trace the initial deposit into its form at the date of separation. *See Carpenter*, 245 N.C. App. at 12, 781 S.E.2d at 837 (citations and internal quotations omitted); *see also O'Brien v. O'Brien*, 131 N.C. App. 411, 418–19, 508 S.E.2d 300, 306 (1998), *rev. denied*, 350 N.C. 98 (1999) (rejecting the common-law theory of transmutation, defined as the creation of a rebuttable presumption that

all the property has been transmuted into marital property, after nonmarital property is commingled with marital property).

Here, Defendant failed to offer evidence to rebut Plaintiff's evidence that Tar Kiln Ridge was not purchased or otherwise originally acquired with marital property. In light of Wife's passing, it is understandable why Defendant encountered difficulties with the applicable burden-shifting principles. *See Atkins,* 102 N.C. App. at 206, 401 S.E.2d at 787.

Defendant's primary argument on this point was Plaintiff's payments on the second deed of trust created marital equity, and thus, ongoing acquisition during the marriage for purposes of equitable distribution. *See Wade v. Wade*, 72 N.C. App. 372, 380, 325 S.E.2d 260, 268–69 (1985) (Acquisition is "the ongoing process of making payment for property or contributing to the marital estate rather than being fixed on the date that legal title to property is obtained.").

In *Wade*, the husband acquired a parcel of undeveloped land before the marriage, and the husband and wife jointly contributed to the construction of a home on the parcel to serve as the marital residence. *See id.* at 377, 325 S.E.2d at 266. Because the husband and wife each contributed to the parcel's increase in value, this Court noted "the marital estate invested substantial sums in improving the real property by constructing a house on it; therefore, the marital estate is entitled to a proportionate return of its investment." *See id.* at 380, 325 S.E.2d at 268. Unlike the facts in *Wade*, no evidence tends to show Wife contributed to the development of Tar

Kiln Ridge, and Plaintiff's efforts increased the value of a separate investment property which he jointly-held with a third-party, not a shared marital residence. *Wade* is factually distinguishable on both bases.

On the other hand, Plaintiff provided ample testimony to support his contention and burden to show that Tar Kiln Ridge was acquired exclusively with his separate property: Plaintiff began saving money as a child working on his grandfather's tobacco farm; Plaintiff used personal savings to fund his portion of the down payment of the initial purchase price and a pre-marital personal checking account for his portion of monthly payments on both deeds of trust; and Plaintiff and Wife had kept their finances separate during the marriage.

Here, the trial court's findings carefully traced the timing, source of funds expended and any additional indebtedness, which may have altered the character of Plaintiff's separate property, through acquisition. *See Crago*, 268 N.C. App. at 159–60, 834 S.E.2d at 705. While one could reasonably argue there were two distinct phases to the subdivision development, the trial court determined in Finding 11 that the sale of the first lot before the marriage marked the point at which the value of the subdivision had reached its full potential, as evidenced by the increased BB&T loan, despite ongoing work to complete development. We note Finding 12, discussing the second, substantially larger BB&T loan which closed four days after the marriage for no additional collateral, is unchallenged and therefore binding on appeal. *See Peltzer*, 222 N.C. App. at 787, 732 S.E.2d at 360. This unchallenged finding also tends to

support a portion of the trial court's conclusion labeled as Finding 15, that the pre-marital sale of the first lot on 17 August 1998 was the moment Plaintiff acquired his share of the subdivision as separate property.

Next, in an apparent challenge to Finding 11, Defendant expounds regarding conditions precedent to local government recognition of a subdivision. We do not dispute the legal validity of Defendant's citations to our General Statutes or the Carteret County Subdivision Ordinances; however, Defendant has not provided, nor are we aware of binding precedent holding that a real estate development cannot be acquired as separate property for purposes of equitable distribution before a local governmental entity would formally recognize the development as a subdivision within the meaning of our General Statutes. Although there are various ways to legally subdivide a parcel outside of plat recordation, at the time, the development in this case would not have become a subdivision within the meaning of our General Statutes until it was properly platted and approved by various state and local entities as provided by the applicable county subdivision ordinance. *See* N.C. Gen. Stat. § 153A-330 *et seq.* (1997) (repealed by S.L. 2019-111, § 2.2, as amended by S.L. 2020-25, § 51(b), eff. June 19, 2020). Accordingly, to the extent Finding 11 implies Tar Kiln Ridge became a subdivision as a matter of law on 17 August 1998—before the final plat was approved and recorded—this finding is not supported by competent evidence, and we disregard it on appeal. *See Foxx*, 282 N.C. App. at 724, 872 S.E.2d at 372–73. Nevertheless, for purposes of our equitable-distribution analysis, we

- 14 -

discern no prejudicial error in Finding 11 regarding the "defining moment" the property became a subdivision and maximized its potential value.

We similarly do not discern error in the trial court's reasoning in the conclusion labeled as Finding 15, that Tar Kiln Ridge was acquired as Plaintiff's separate property upon the pre-marital sale of the first lot. The record reflects that Plaintiff and Walter invested significant time and resources prior to the marriage in acquiring and improving the land that became Tar Kiln Ridge, including the sale of the first lot to a *bona fide* purchaser for value. Furthermore, Plaintiff's unrebutted testimony established he exclusively used separate, pre-marital funds to pay down his portion of the notes secured by the deeds of trust. Therefore, the trial court properly concluded Plaintiff had rebutted the marital presumption. *See Atkins,* 102 N.C. App. at 206, 401 S.E.2d at 787.

We next consider Defendant's active appreciation argument, in relation to the conclusion contained in the second portion of Finding 11—namely, that the pre-marital sale of the first lot marked "the time in which the property value increase[d] to the sum of all the lots to be sold." For purposes of this argument, we presume, without deciding, Defendant's argument was properly preserved.[5]

"When marital efforts actively increase the value of separate property, the increase in value is marital property and is subject to distribution." *Blair v. Blair,*

---

[5] The transcripts reveal the phrase "active appreciation" was uttered precisely once during the hearing, by Defendant's counsel in the form of a relevance objection.

260 N.C. App. 474, 491, 818 S.E.2d 413, 424 (2018) (quoting *Conway,* 131 N.C. App. at 615–16, 508 S.E.2d at 817–18). "To demonstrate active appreciation of separate property, there must be a showing of the (1) value of asset at time of acquisition, (2) value of asset at date of separation, (3) difference between the two. . . . In order for the court to value active appreciation of separate property and distribute the increase as marital property, the party seeking distribution of the property must offer credible evidence showing the amount and nature of the increase." *See id*. at 491, 818 S.E.2d at 424.

Plaintiff's and Walter's active efforts ultimately increased the value of the Tar Kiln Ridge lots to a sum in excess of $600,000. At first glance, we were curious as to the evidentiary basis for Finding 11 and the trial court's failure to identify the marital component of Tar Kiln Ridge, in the form of the active appreciation of the disputed lots attributable to Plaintiff's active efforts during the marriage. Because Plaintiff's time and manual labor in constructing the subdivision during the marriage were "contributions, monetary or otherwise, by one or both spouses," any increase in value of the disputed lots due to Plaintiff's efforts during the marriage would normally constitute active appreciation. *See Lawrence,* 75 N.C. App. at 595, 331 S.E.2d at 188. Tar Kiln Ridge may arguably be more properly classified as a divisible or "mixed" asset, *see Carpenter,* 245 N.C. App. at 11, 781 S.E.2d at 837, comprised of a separate (partially-improved land) and a marital (active appreciation during marriage)

component as a result of its dual character, *see Crago*, 268 N.C. App. at 159, 834 S.E.2d at 705.

As recognized in unchallenged Findings 8 and 9, Plaintiff and Walter "did all the work themselves on the Tar Kiln Ridge property," and their ongoing work to develop Section Two, where the disputed lots were located, continued well into the marriage. Defendant offered evidence of the property values on the date of separation and near the date of distribution; however, the record is silent concerning their value until 2014. Critically, no evidence tends to show their value anywhere remotely approaching the date of acquisition, as determined by the trial court, 17 August 1998. Therefore, because Defendant did not "offer credible evidence showing the amount and nature of the increase," the trial court did not reversibly err by failing to value and distribute the purported marital component of Plaintiff's separate, real property. *See Blair*, 260 N.C. App. at 491, 818 S.E.2d at 424.

Because the development of Tar Kiln Ridge was partly funded by a debt incurred by Plaintiff during the marriage, and the disputed properties were still owned on the date of separation, the trial court correctly concluded the marital presumption applied. *See* N.C. Gen. Stat. § 50-20(b)(1). Nevertheless, the trial court properly found that Plaintiff had acquired the property using separate funds and traced his contributions through his subsequent acquisition of Tract 8A during the marriage. *See Atkins,* 102 N.C. App. at 206, 401 S.E.2d at 787.

Based on the evidence of record, the trial court correctly concluded Plaintiff rebutted the marital presumption by the greater weight of the evidence. *See* N.C. Gen. Stat. § 50-20(b)(1)–(2). Furthermore, the trial court did not reversibly err in failing to identify the "dual character" of Tar Kiln Ridge, because Defendant failed to meet his burden to show the amount and nature of the purported increase in value. *See Crago*, 268 N.C. App. at 159, 834 S.E.2d at 705; *Blair*, 260 N.C. App. at 491, 818 S.E.2d at 424.

We affirm the trial court's classification of the disputed real property as Plaintiff's separate property and hold the trial court did not err in failing to value and distribute any purported marital component of the disputed properties where Defendant failed to meet his burden to establish the active appreciation of Plaintiff's separate property. *See Nelson*, 179 N.C. App. at 168, 633 S.E.2d at 126–27.

## B. Classification of Personal Property

Next, Defendant argues the trial court erred in classifying the 1957 Farmall tractor, the 1963 Farmall tractor, the 1995 Core Sounder boat, the 1996 boat trailer, the 1995 Caterpillar bulldozer, and the 1993 Caterpillar backhoe as Plaintiff's separate property. Defendant asserts reliance to his detriment on Plaintiff's pre-trial equitable-distribution affidavits and discovery responses describing the items as marital property. We disagree.

Plaintiff testified: he inherited the Farmall tractors from his father and grandfather before the marriage; he acquired the Core Sounder boat and built the

trailer in 1995; he acquired the bulldozer in 1994; and he acquired the backhoe in either August or September of 1998—all prior to the marriage.

Defendant's argument fails for several reasons. First, Plaintiff's testimony regarding acquisition of these vehicles—to which Defendant did not object at trial—was competent evidence before the trial court, as were Plaintiff's affidavits and discovery responses. Any contradictions or discrepancies in the evidence were for the trial court to resolve. *See Smallwood v. Smallwood*, 227 N.C. App. 319, 322, 742 S.E.2d 814, 817 (2013) ("Evidentiary issues concerning credibility, contradictions, and discrepancies are for the trial court—as the fact-finder—to resolve[.]"); *see also Phelps v. Phelps*, 337 N.C. 344, 357, 446 S.E.2d 17, 25 (1994) ("[T]he trial judge, sitting without a jury, has discretion as finder of fact with respect to the weight and credibility that attaches to the evidence.").

Second, Defendant did not rebut Plaintiff's competent testimony regarding his pre-marital acquisition of the disputed vehicles. *See Atkins,* 102 N.C. App. at 206, 401 S.E.2d at 787. Defendant's testimony was limited to the purported value of certain vehicles.

Third, Defendant advances no legal authority tending to support this argument, subjecting the issue to abandonment. *See* N.C. R. App. P. 28(b)(6). We affirm the trial court's classification of the disputed vehicles as Plaintiff's separate property. *See Nelson*, 179 N.C. App. at 168, 633 S.E.2d at 126–27.

## C. Marital Debt

Finally, Defendant contends the trial court erred in finding the second BB&T deed of trust did not subject Defendant "to a single penny of indebtedness," a statement located in Finding 13. Specifically, Defendant argues "the debt was incurred during the marriage for a marital purpose[; c]onsequently . . . Defendant *would have* certainly shared responsibility for the debt *had any of the debt remained outstanding* on the date of separation," despite Wife not co-signing the note or deed of trust. (Emphasis added).

Defendant advances no authority in support of this argument, and we deem it abandoned. *See* N.C. R. App. P. 28(b)(6). To the extent this issue is an extension of Defendant's argument regarding the trial court's classification of Tar Kiln Ridge, our analysis is unchanged. Defendant concedes no debt remained outstanding on the date of separation, and Wife's estate was not subject to any financial responsibility for the second BB&T note and deed of trust.

## VI. Conclusion

In sum, the trial court properly concluded the disputed lots were Plaintiff's separate property. Defendant failed to meet his burden to establish a marital component attributable to active appreciation. Furthermore, we affirm the trial court's classification of the disputed vehicles and marital debt. Accordingly, we affirm the trial court's equitable distribution judgment.

AFFIRMED.

Judges TYSON and GRIFFIN concur.